IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE STATE OF ALASKA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>EXPRESS SCRIPTS, INC., *et al.*,<br><br>                    Defendants. | Case No. 3:23-cv-00233-JMK<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>EXPRESS SCRIPTS'<br>MOTION TO DISMISS** |

At Docket 28, Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, ESI Mail Pharmacy Services, and Express Scripts Pharmacy, Inc. (collectively "Express Scripts"), move the Court to dismiss the State of Alaska's ("the State's") claims.  The State responded in opposition at Dockets 33 and 35.  The Court took this matter under advisement following oral argument on April 23, 2024.  At argument, the Court also took under advisement an oral motion to stay this case pending an Alaska state court appeal in a similar case.[1]

As explained below, Express Scripts' *Motion to Dismiss* is **GRANTED IN PART AND DENIED IN PART**.  The State may maintain its public nuisance and CPA claims insofar as they do not implicate Medicare Part D plans.

---

[1] Docket 65 (text entry).

Additionally, the State's oral *Motion to Stay* is **DENIED**. Staying this case to await the outcome of an appeal in *State of Alaska v. Walgreen Co., et al.*,[2] would significantly delay this case and only resolve one of several issues. Furthermore, the Alaska Supreme Court's ultimate decision in *Walgreens* is not likely to severely disrupt this litigation, as this Court has concluded below that the State's public nuisance claim may proceed. There is the possibility that the Supreme Court affirms Judge Gandbhir's decision and undermines this Court's analysis of the public nuisance claim. If that occurs, the parties may have conducted some superfluous discovery. However, because each of the claims in this case stems from the same core set of facts, the Court expects that discovery as to the public nuisance claim will significantly overlap with the other two claims at stake and reduce the likelihood of unnecessary discovery.

## I.    BACKGROUND

The State brings this action on behalf of Alaskans against Express Scripts for its alleged role in fueling the opioid epidemic in Alaska. Express Scripts is a Pharmacy Benefits Manager ("PBM"), an administrator hired by third-party payors, like government entities, insurers, and employers, to design and administer prescription drug programs.[3] In its capacity as a PBM, Express Scripts designs prescription drug benefits programs and creates national formularies, or lists of prescription medications which set the criteria under which pharmaceutical drugs are covered and reimbursed under health plans.[4] Additionally,

---

[2] No. 3AN-22-06675 CI (Alaska Super. Ct. Mar. 1, 2024).
[3] Docket 24 (SEALED) at 5.
[4] *Id.* at 5–6, 13–15.

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 2
Case 3:23-cv-00233-JMK    Document 73    Filed 05/22/24    Page 2 of 28

it controls a network of retail pharmacies, including pharmacies in Alaska.[5] And, it independently dispenses prescription medications through its mail order pharmacy.[6]

The State alleges that Express Scripts substantially contributed to the opioid epidemic in Alaska in its capacity as a PBM, a research provider, and a mail order pharmacy.[7] First, it asserts that Express Scripts colluded with opioid manufactures to increase prescription opioid sales in Alaska by favorably placing certain opioids on its formularies and failing to put in place safeguards that would have reduced the illegitimate use and dissemination of these drugs.[8] Second, the State alleges that, by virtue of its position as a middleman in the prescription drug market, Express Scripts collected vast troves of data regarding prescribing practices and patient drug use and, despite indications of opioid abuse and diversion in this data, failed to take any steps to address these issues, such as implementing adequate utilization management measures.[9] Additionally, the State asserts Express Scripts aided opioid manufacturers in misleading marketing efforts.[10] Finally, the State alleges that Express Scripts operated its mail order pharmacy so that it dispensed opioids for prescriptions written by high-volume prescribers despite data that indicated these prescriptions were not written for medically legitimate purposes.[11] The State asserts two claims—one for public nuisance and one for violations of the Alaska

---

[5] *Id.* at 6–7.
[6] *Id.* at 7.
[7] *Id.* at 13.
[8] *Id.* at 16–18, 31–36.
[9] *Id.* at 18–25.
[10] *Id.* at 25–30.
[11] *Id.* at 39–42.

*The State of Alaska v. Express Scripts, Inc. et al.*                                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                Page 3
Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 3 of 28

Unfair Trade Practices and Consumer Protection Act ("CPA").[12]  At Docket 56, the State moved for leave to amend its complaint to add an additional claim for violations of the federal Racketeer-Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*, which the Court granted.

## II.   LEGAL STANDARD

A party may move for dismissal when a plaintiff's complaint "fails to state a claim upon which relief can be granted."[13]  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[14]  Conclusory statements, unwarranted inferences, and "[t]hreadbare recitals of the elements of a cause of action" will not defeat dismissal; a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  In reviewing the motion to dismiss, the court construes all facts alleged in the complaint in the light most favorable to the plaintiff.[16]  Ultimately, dismissal for failure to state a claim is proper "if it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief."[17]

---

[12]  *Id.* at 50–59.

[13]  Fed. R. Civ. P. 12(b)(6).

[14]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[15]  *Id.*

[16]  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)).

[17]  *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001)).

*The State of Alaska v. Express Scripts, Inc. et al.*                              Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                        Page 4

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 4 of 28

## III. DISCUSSION

As explained below, the State may maintain its public nuisance and CPA claims insofar as they do not implicate Medicare Part D plans.

### A. The State Adequately States a Public Nuisance Claim

Express Scripts argues that the State's common law public nuisance claim should be dismissed because the tort of public nuisance is limited to property-based, not product-based claims, and the State has not plausibly alleged interference with a public right, that Express Scripts owed a legal duty, or caused the harms alleged.[18] The State responds that a public nuisance under Alaska law involves an interference with a right common to the general public, and maintains that its complaint adequately alleges interference with a such a right, as well as the other elements of a nuisance claim.[19]

### (1) Under Alaska law, the tort of public nuisance is not limited to property-based claims and may be based on the use of a lawful product

Express Scripts argues that Alaska law limits public nuisance to claims involving an interference with property.[20] At oral argument, Express Scripts took a narrower position and argued that Alaska courts have never recognized a public nuisance claim based on the use of a lawful product.[21] The State responds that a public nuisance under Alaska law involves an interference with a right common to the general public and

---

[18] Docket 28 at 5–25.
[19] Docket 35 (SEALED) at 13–30.
[20] Docket 28 at 6–9.
[21] Docket 69 at 5–6.

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 5

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 5 of 28

highlights recent cases decided in Alaska Superior Court that have allowed public nuisance claims involving lawful products that interfere with public health and safety to proceed.[22]

When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case."[23] The precise issues of whether a public nuisance claim must be limited to property-based claims or may be based on the use of a lawful product have not yet been adjudicated by the Alaska Supreme Court. Therefore, this Court must determine what the Alaska Supreme Court would decide if faced with these questions. Based on the Alaska Supreme Court's adherence to the Restatement (Second) of Torts and the strong trend of Alaska Superior Court decisions allowing public nuisance claims in parallel contexts, this Court concludes that public nuisance claims need not be property-based and a claim may be based on the use of a lawful product under Alaska law.

In *Maier v. City of Ketchikan*,[24] the Alaska Supreme Court first considered a public nuisance claim and adopted a limited view of the tort. At that time, the Court held that "to establish a claim based on public nuisance, it is not sufficient merely to show that one was injured by the creation or maintenance of some physical condition which would cause injury to a person coming into contact with it."[25] Since *Maier*, the Alaska Supreme

---

[22] Docket 35 (SEALED) at 13–20.
[23] *Medical Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.,* 306 F.3d 806, 812 (9th Cir. 2002).
[24] 403 P.2d 34 (Alaska 1965).
[25] *Maier*, 403 P.2d at 38.

*The State of Alaska v. Express Scripts, Inc. et al.*                                      Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                  Page 6

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 6 of 28

Court has not expressly addressed whether the tort of public nuisance was limited to claims involving property. However, the Alaska Supreme Court appears to have abandoned the *Maier* Court's requirement that a public nuisance involved the "creation of maintenance of some physical condition."[26] In a subsequent decision, *Friends of Willow Lake, Inc. v. State*,[27] the Court approvingly cited the Restatement (Second) of Torts and defined a public nuisance as "an unreasonable interference with a right common to the general public."[28] Elsewhere, Alaska courts have defined "public nuisance" in similarly broad terms.[29]

A number of recent Alaska Superior Court decisions in cases seeking to impose liability for the oversupply of opioids in Alaska have looked to *Friends of Willow Lake*, allowed public nuisance claims like the one at issue here to proceed, and signaled their understanding that Alaska law does not limit public nuisance claims to claims involving property.[30] Furthermore, these decisions have blessed public nuisance claims based on the use of a lawful product. For instance, in the State's case against opioid manufacturer Purdue Pharma, Judge Crosby concluded that "[t]he Alaska Supreme Court has indicated its agreement with federal common law defining a public nuisance as an

---

[26] *Id.*
[27] 280 P.3d 542 (Alaska 2012).
[28] *Friends of Willow Lake, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Aviation & Airports*, 280 P.3d 542, 548 (Alaska 2012) (citing Restatement (Second) Of Torts § 821b(1) (1979)).
[29] *Taha v. State*, 366 P.3d 544, 546 (Alaska Ct. App. 2016).
[30] *State v. Purdue Pharma L.P.*, No. 3AN-17-09966CI, 2018 WL 4468439, at *4 (Alaska Super. July 12, 2018); *State v. Mallinckrodt*, No. 3AN-19-04861CI, slip op. at 6–7 (Alaska Super. Aug. 28, 2019) (Docket 35-3 (SEALED) at 7–8); *State v. McKesson*, No. 3AN-18-10023CI, slip op. at 5 (Alaska Super. Aug. 28, 2019) (Docket 35-4 (SEALED) at 5); *State v. Allergen*, No. 3AN-21-05207CI, slip op. at 9–10 (Alaska Super. June 13, 2022) (Docket 35-5 (SEALED) at 10–11); *State v. Teva Pharm. Indus., Ltd.*, No. 3AN-21-05207CI, slip op. at 10–11 (Alaska Super. June 13, 2022) (Docket 35-6 (SEALED) at 11–12).

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss          Page 7

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 7 of 28

unreasonable interference with a right common to the general public, such as a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience."[31]  Judge Crosby and Judge Matthews have reached the same conclusion in the series of other opioid matters involving distributors and retail pharmacies.[32]  Outside the opioid context, in *State v. JuulLabs, Inc.*, Judge Lamoureux noted that "[t]he Alaska Supreme Court has not defined the scope of an actionable common law claim for public nuisance," but cited *Friends of Willow Lake, Inc.*, and the Restatement (Second) of Torts as the applicable authorities and analyzed whether the State had alleged an interference with a public right.[33]  These cases suggest that Alaska courts understand that Alaska law regarding public nuisance has evolved since *Maier*, that claims need not be property-based, and may be based on the use of a lawful product provided there is an interference with a public right.

Judge Gandbhir's recent decision in *State v. Walgreens* charted a different course.  In a case seeking to impose liability on Walgreens for its retail pharmacy's role in the opioid epidemic, Judge Gandbhir concluded that the State did not identify a public right that Walgreens violated by selling lawfully prescribed opioids.[34]  Although the State

---

[31] *Purdue Pharma L.P.*, 2018 WL 4468439, at *4.

[32] *State v. Mallinckrodt*, No. 3AN-19-04861CI, slip op. at 6–7 (Alaska Super. Aug. 28, 2019) (Docket 35-3 (SEALED) at 7–8); *State v. McKesson*, No. 3AN-18-10023CI, slip op. at 5 (Alaska Super. Aug. 28, 2019) (Docket 35-4 (SEALED) at 5–8); *State v. Allergen*, No. 3AN-21-05207CI, slip op. at 9–10 (Alaska Super. June 13, 2022) (Docket 35-5 (SEALED) at 10–11); *State v. Teva Pharm. Indus., Ltd.*, No. 3AN-21-05207CI, slip op. at 10–11 (Alaska Super. June 13, 2022) (Docket 35-6 (SEALED) at 11–12).

[33] *State v. Juul Labs, Inc.*, No. 3AN-20-09477 CI, 2022 WL 2533303, at *8–10 (Alaska Super. Feb. 23, 2022).

[34] *See State v. Walgreens Co. et al.*, No. 3AN-22-06675CI, slip op. at 4–8 (Mar. 1, 2024) (Docket 55-1 at 5–9).

*The State of Alaska v. Express Scripts, Inc. et al.*  Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss  Page 8

Case 3:23-cv-00233-JMK  Document 73  Filed 05/22/24  Page 8 of 28

alleged that Walgreens' sale of opioids interfered with public health, Judge Gandbhir determined that she could not reconcile the Restatements' examples of interferences with public health with the conduct alleged—"the act of distributing lawful medication."[35] The order also cited the Restatement (Third) of Torts and *City of Chicago v. Beretta U.S.A. Corp.*,[36] and concluded that liability for the lawful sale of products under public nuisance doctrine is inappropriate.[37]

Express Scripts contends that, among the Alaska Superior Court decisions addressing public nuisance, Judge Gandbhir's decision is the most persuasive due to the depth of its analysis. However, in this Court's view, Judge Gandbhir's decision is an outlier in Alaska and its reasoning does not readily apply in this case. For example, Judge Gandbhir looks to the Restatement (Third) of Torts and *City of Chicago v. Beretta* to draw the conclusion that "the threat of misuse of an otherwise legal product is not a violation of a public right even if there has been damage to the public."[38] But Alaska has not adopted the Restatement (Third) of Torts and few Alaska cases cite it. Moreover, this Court does not find the Illinois Supreme Court's decision in *Beretta* persuasive here, as the public rights at stake are not "so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it."[39] As the Court will discuss, the State has alleged concrete interferences with the public health,

---

[35] *Id.* at 6.
[36] 821 N.E. 2d 1099 (Ill. 2004).
[37] *Walgreens*, No. 3AN-22-06675CI, slip op. at 7.
[38] *Id.*
[39] 821 N.E. 2d at 1114–16.

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 9

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 9 of 28

public safety, public peace, and the like. The Court need not adopt a nebulous definition of "public health" to allow the public nuisance claim alleged in this case to proceed.

Finally, Judge Gandbhir based her decision in part on a comparison between the conduct at issue in *Walgreens*—the dispensation of lawfully prescribed opioids—and the Restatement's examples of interference with public health—keeping diseased animals or the maintenance of a pond breeding malarial mosquitoes.[40] This Court need not rigidly adhere to these antiquated examples, as they serve to highlight that a nuisance occurs when private conduct interferes with the "interests of the community at large" because they impose externalities.[41] As the Court will discuss, Express Scripts is alleged to have caused a significant increase in the sale and use of illicit drugs in Alaskan communities, significant increases in diseases spread by injecting drugs, and higher rates of child abuse and neglect, among other things.[42] Like an individual who maintains a pond that breeds malarial mosquitos or keeps diseased animals, Express Scripts' private conduct has imposed negative externalities on the community at large.

As the briefing and oral argument on this motion make clear, courts around the country have taken divergent views on whether conduct contributing to the oversupply of prescription opioids may constitute a public nuisance. Ultimately, this Court's task is to determine how the Alaska Supreme Court would view the issue. Given the Alaska Supreme Court's decision in *Friends of Willow Lake* and the trend of Alaska Superior

---

[40] *Walgreens*, No. 3AN-22-06675CI, slip op. at 6 (citing Restatement (Second) of Torts § 821b, cmt b.).
[41] Restatement (Second) of Torts § 821b, cmt b.
[42] Docket 24 (SEALED) at 44–50.

*The State of Alaska v. Express Scripts, Inc. et al.*                                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 10

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 10 of 28

Court decisions, this Court concludes that Alaska law allows for a claim of public nuisance that is not property-based and based on the use of a lawful product.

**(2)    The State has adequately alleged the elements of a public nuisance claim**

Express Scripts argues that the State has not alleged interference with a public right, a legal duty, or causation.[43]  At oral argument, Express Scripts argued that the State failed to allege interference with a public right, but rather that its claims seek to redress an aggregation of individual injuries.[44]  The State responds that it has alleged each element of the public nuisance claim.[45]

**(a)    The State has alleged interference with common rights**

Express Scripts argues that the opioid-related harms the State alleges in this case interfere with individual, not collective, rights.[46]  The State insists that it has alleged that Express Scripts' conduct involves interference with "the public health, the public safety, the public peace, the public comfort and the public convenience . . . ."[47]

A public nuisance is "an unreasonable interference with a right common to the general public."[48]  In *Juul*, Judge Lamoureux drew a distinction between interference with a public right that is collective in nature and the aggregation of many potential individual injuries.[49]  There, the State alleged that the defendants "interfered with a public

---

[43] Docket 28 at 16–25.
[44] Docket 69 at 8.
[45] Docket 35 (SEALED) at 22–30.
[46] Docket 28 at 18.
[47] Docket 35 (SEALED) at 22 (quoting Docket 24 (SEALED) at ¶ 223).
[48] *Friends of Willow Lake, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Aviation & Airports*, 280 P.3d 542, 548 (Alaska 2012) (citing Restatement (Second) of Torts § 821b(1) (1979)).
[49] 2022 WL 2533303, at *8-10.

*The State of Alaska v. Express Scripts, Inc. et al.*                                          Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                                    Page 11

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 11 of 28

right, namely public health, by significantly contributing to a youth vaping crisis by changing societal norms regarding youth tobacco use."[50]  The Court reasoned that "[t]he allegation that Defendants' conduct has impacted a large number of persons does not convert the alleged interference to an interference with a public right."[51]  Ultimately, the Court "decline[d] to recognize a public nuisance cause of action based on a public right as broad as proposed by the State in this case - a right to be free from conduct that injures Alaskans' health" and concluded "to the extent that the State focuses on the problem of youth vaping, the State has failed to identify a collective right of the public," but "has identified potential individual injuries."[52]

In this case, the State has identified several collective rights with which it alleges Express Scripts' conduct has interfered.  It alleges that Express Scripts' conduct interfered with "the public health, the public safety, the public peace, the public comfort and the public convenience" and supports this allegation with plausible facts.  Unlike in *Juul*, the State is not merely alleging that Express Scripts' conduct injures Alaskans' health, *e.g.*, by causing overdose deaths or substance use disorder.  Rather, the State goes further and alleges that Express Scripts caused a range of harms that impact Alaskans as a group. The alleged harms differ in kind to the harms rejected as individual in *Juul* as they relate to Alaskans' safety in their communities, their ability to enjoy public spaces, the quality and availability of government services, the risk of communicable disease, and other social

---

[50] *Id.* at *8.
[51] *Id.* at *10 (citing Restatement (Second) of Torts § 821 B, cmt. g).
[52] *Id.*

*The State of Alaska v. Express Scripts, Inc. et al.*                                   Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                Page 12

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 12 of 28

harms. The State pleads that Express Scripts caused an increase in the sale and use of illicit drugs in Alaskan communities, declines in labor force participation, significant increases in diseases spread by injecting drugs, and higher rates of child abuse and neglect, among other things.[53] Furthermore, the State asserts that the proliferation of opioids has led to other social issues, such as increased burdens on government services and homelessness.[54] Accordingly, it stands to reason that courts handling parallel cases involving prescription opioids in Alaska have concluded that these cases involve a collective right.[55]

### (b) The State's claim does not fail because it did not allege a legal duty

Next, Express Scripts argues that the State has not plausibly alleged a legal duty.[56] The State responds that it does not need to allege a specific duty because everyone is under a duty not to create a public nuisance, but even if a legal duty must be alleged, Express Scripts had such a duty because it undertook to provide PBM and mail order pharmacy services in Alaska and had a duty to do so reasonably.[57]

---

[53] Docket 24 (SEALED) at 44–50.

[54] *Id.* at 49–50.

[55] *See, e.g., Purdue Pharma L.P.*, No. 3AN-17-09966CI, 2018 WL 4468439, at *4 (Alaska Super. July 12, 2018) ("The court finds the facts as alleged could reasonably be construed as demonstrating a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience and therefore an interference with a right common to the general public."); *Mallinckrodt*, No. 3AN-19-04861CI, slip op. at 5 (Alaska Super. Aug. 28, 2019) (Docket 35-3 (SEALED) at 6) (concluding that State adequately alleged an interference with a public right); *McKesson*, No. 3AN-18-10023CI, slip op. at 4 (Alaska Super. Aug. 28, 2019) (Docket 35-4 (SEALED) at 3, 8) (same).

[56] Docket 28 at 20–22.

[57] Docket 35 (SEALED) at 25–27.

*The State of Alaska v. Express Scripts, Inc. et al.*   Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss   Page 13

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 13 of 28

At least one case in Alaska suggests that a breach of duty is required for a nuisance claim.[58]  However, the Alaska Supreme Court has not provided further guidance. This Court's examination of the treatise cited by the Alaska Supreme Court indicates that there is a general duty not to create or maintain a duty in the nuisance context in the same sense that there is a general duty to act with reasonable care in the negligence context.[59] By alleging that Express Scripts violated a public right, the State has effectively alleged that Express Scripts violated the general duty not to create a nuisance.

###### (c)   The State adequately alleges causation

Finally, Express Scripts contends that the State's public nuisance claim fails because the State has not alleged that their conduct was the legal cause of the alleged harm.[60]  Specifically, Express Scripts argues that common sense forecloses any reasonably direct causal chain that links its conduct as a PBM and mail order pharmacy with an interference with a common right.[61]  Furthermore, Express Scripts cites cases in which courts have concluded a defendant's lack of control over the instrumentality of the nuisance eliminated causation and argue that they lack control over how doctors prescribe opioids or how patients take them.[62]  In its view, its role administering prescription drug benefits programs is especially attenuated from the alleged harms here.[63]  The State responds that

---

[58] *DeNardo v. Corneloup*, 163 P.3d 956, 961 n.13 (Alaska 2007) (citing 58 Am. Jur. 2d, *Nuisance* § 9 (2002)) ("Nuisance also requires a breach of a duty.").

[59] *See* 58 Am. Jur. 2d Nuisances § 6 ("The creation or maintenance of a nuisance is a violation of an absolute duty . . . .").

[60] Docket 28 at 22–25.

[61] *Id.*

[62] *Id.* at 23–25.

[63] *Id.* at 25.

*The State of Alaska v. Express Scripts, Inc. et al.*                          Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                          Page 14

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 14 of 28

causation is generally an issue reserved for the fact finder and that causation is satisfied in any event because the general harm alleged was a foreseeable consequence of Express Scripts' actions.[64]

The tort of public nuisance requires a plaintiff show causation.[65] Generally, proximate cause is a question of fact reserved for the jury and "becomes a matter of law only where reasonable minds cannot differ."[66] Under Alaska law, "[p]roximate cause requires only that the general kind of harm be foreseeable for an actor's conduct to be considered the proximate cause of the plaintiff's injuries."[67]

The State's Complaint alleges that Express Scripts favorably placed certain opioids on its formularies to increase their utilization, aided in marketing opioids, and failed to take steps to prevent diversion when confronted with evidence of an opioid epidemic.[68] Indeed, the State alleges that Express Scripts had or should have had insight into the impact of its conduct through vast troves of data it collected regarding opioid utilization and other information it received.[69] The State sufficiently pleads proximate cause as the general kinds of harms alleged here—the oversupply of opioids in Alaska and attendant societal consequences—were foreseeable to an actor that administers prescription drug benefits programs or fills prescriptions in manner Express Scripts did.

---

[64] Docket 35 (SEALED) at 27–30.
[65] *See Maier*, 403 P.2d at 38.
[66] *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007).
[67] *Id.* at 149.
[68] Docket 24 (SEALED) at 16–18, 31–36.
[69] *Id.* at 18–25.

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 15
Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 15 of 28

**B.    The State Adequately States a CPA Claim**

Next, Express Scripts asserts that the State's CPA claim fails.  It argues the State has not alleged deception as required by Federal Rule of Civil Procedure 9(b), has not plausibly alleged causation, and that Express Scripts further argues that the CPA does not apply to Express Scripts' mail order pharmacy under a statutory exemption.[70]  The State responds that the heightened pleading standard imposed by Rule 9(b) does not apply in this case and that, even under Rule 9(b), it has properly alleged deception.[71]  Additionally, it argues that the State need not prove injury or causation under the CPA, but has sufficiently alleged causation here in any event.[72]  And it contends that Express Scripts' mail order pharmacy is not exempt from the CPA.[73]

**(1)    The State's claim does not fail under Rule 9(b)**

Express Scripts asserts that the State's CPA claim fails because it has not alleged deception with particularity under Rule 9(b).[74]  The State responds that Rule 9(b) does not apply, but, in any event, it has met the pleading standard.[75]

Federal Rule of Civil Procedure 9(b) requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud."  "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged[.]'"[76]

---

[70] Docket 28 at 25–29.
[71] Docket 35 (SEALED) at 30–34.
[72] *Id.* at 34–35.
[73] *Id.* at 35–36.
[74] Docket 28 at 25–27.
[75] Docket 35 (SEALED) at 30–34.
[76] *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

*The State of Alaska v. Express Scripts, Inc. et al.*                                   Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss          Page 16
Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 16 of 28

"Rule 9(b) applies to any claim that is 'grounded in fraud. . . .'"[77] "A case is grounded in fraud if 'the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim.'"[78] "A UTPCPA claim can be subject to the requirements of Rule 9(b)."[79] For example, in *Van v. LLR*, this Court concluded that Rule 9(b) applied to a plaintiff's claim under the CPA because their claim was based on allegations that defendants' representations were deceptive and false and that the defendants intentionally misrepresented the propriety of a tax.[80] On the other hand, in *Vernon v. Qwest Communications International, Inc.*, consumer protection claims based on Qwest's omissions and misrepresentations to its internet customers did not trigger Rule 9(b) because the complaint did not allege an intent to deceive or an overarching fraudulent scheme.[81]

Rule 9(b) does not apply as this case is not "grounded in fraud." Although the State alleges that that Express Scripts "intentionally undertook efforts to conceal its conduct,"[82] Express Scripts' concealment of its actions does not constitute a "unified course of fraudulent conduct."[83] And, even if this concealment was a unified course of

---

[77] *Van v. LLR, Inc.*, 500 F. Supp. 3d 927, 935 (D. Alaska 2020) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)).

[78] *Id.* (internal alterations omitted) (quoting *Ciba-Geigy Corp.*, 317 F.3d at 1103)).

[79] *Id.*; *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009) (Rule 9(b) does not apply to a consumer protection act case where fraud is not alleged); *In re Mattel, Inc.,* 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008) (allegations that the representations were likely to deceive, absent allegations of common law fraud elements such as intent to deceive or any overarching fraudulent scheme did not need to be pleaded with particularity).

[80] 500 F. Supp. 3d at 936.

[81] 643 F. Supp. 2d at 1264–65.

[82] Docket 57 (SEALED) at ¶ 347; *see also id.* at 101–03.

[83] *Van*, 500 F. Supp. 3d at 935 (quoting *Ciba-Geigy Corp.*, 317 F.3d at 1103).

---

*The State of Alaska v. Express Scripts, Inc. et al.*  Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss  Page 17

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 17 of 28

fraudulent conduct, the State does not rely on that course of conduct as the basis of its claim.  Instead, it alleges that Express Scripts engaged in unfair and deceptive acts and practices by "ignoring evidence of addiction, abuse, and illegitimate prescribing in their data and failing to implement adequate utilization management measures on opioid prescriptions in exchange for payments from opioid manufacturers, assisting manufacturers in their deceptive marketing schemes that were designed to and did increase utilization of opioids, failing to maintain effective controls against diversion of opioids through their mail order pharmacies in violation of the CSA and ACSA."[84]  On the whole, these allegations do not amount to common law fraud, which requires, *inter alia*, a false representation of fact, knowledge of falsity, and intent to induce reliance.[85]

To be sure, in a case where there is not an overarching fraudulent scheme, but "where allegations of both fraudulent and non-fraudulent conduct are made in the complaint," the Court must determine whether the specific allegations of fraud are sufficiently pled under Rule 9(b) and disregard them if that is they are not.[86]  In this case, the State's allegations concerning Express Scripts' deceptive marketing include at least one assertion that that Express Scripts made knowingly false statements of fact and may constitute allegations of fraud.[87]  Nonetheless, the State pleads this allegation with particularity.

---

[84] Docket 24 (SEALED) at 51.
[85] *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010) ("Common law fraud claims require a showing of (1) a false representation of fact; (2) knowledge of the falsity of the representation; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages.").
[86] *Ciba-Geigy Corp.*, 317 F.3d at 1104.
[87] *See* Docket 24 (SEALED) at 30.

*The State of Alaska v. Express Scripts, Inc. et al.*  Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss  Page 18
Case 3:23-cv-00233-JMK  Document 73  Filed 05/22/24  Page 18 of 28

**(2)    The State has alleged causation insofar as it is required for a CPA claim**

Express Scripts argues that the State has not plausibly alleged causation as part of its CPA claim.[88]  However, at oral argument, it acquiesced that causation in the context of a CPA claim is not the same causation analysis that applies in other areas of tort and argued that there is a requirement that the State show a defendant caused the deception.[89]  The State responds that it need not allege causation but has done so.[90]

When the State brings a claim under the CPA, it need not allege injury.[91] Logically, it follows that the State need not prove that a deceptive act caused injury. Ultimately, to prove a CPA claim, all the State must show is that an act or practice is either unfair or deceptive.[92]  Express Scripts' point at oral argument that the State must show that a defendant was the source of a deception is well-taken.  But the State's Complaint is replete with allegations that Express Scripts' conduct was deceptive.[93]

**(3)    Express Scripts' mail order pharmacy is exempt from the State's CPA claim**

Express Scripts argues that its mail order pharmacy is exempt from the scope of the CPA because it is separately regulated by the Alaska Controlled Substances Act ("ACSA").[94]  The State responds that the CPA's exemption provision does not apply here

---

[88] Docket 28 at 27–28.
[89] Docket 69 at 24–25.
[90] Docket 35 (SEALED) at 34–35.
[91] *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534–35 (Alaska 1980) ("Actual injury as a result of the deception is not required.").
[92] *Borgen v. A & M Motors, Inc.*, 273 P.3d 575, 590 (Alaska 2012).
[93] Docket 24 (SEALED) at 50–52.
[94] Docket 28 at 28–29.

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss          Page 19

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 19 of 28

because the ACSA is not meant to supplant remedies under the CPA and does not address unfair or deceptive acts.[95]

Alaska's CPA does not apply to "an act or transaction regulated by a statute or regulation administered by the state, including a state regulatory board or commission, unless the statute or regulation does not prohibit the practices declared unlawful in [the CPA.]"[96] "Put another way, if acts declared unlawful under the [CPA] are prohibited by some other state law or regulation, then they are exempt from the [CPA]."[97] However, this exemption applies only when two requirements are met. First, "AS 45.50.481(a)(1) exempts only those acts or transactions which are the subject of ongoing, careful regulation."[98] This type of regulation is "clearly distinct from and involves something more than mere prohibition."[99] And, second, Alaska courts "have emphasized that such regulation must prohibit the specific act in question . . . ."[100] Ultimately, "unfair acts and practices are exempt from the purview of the Act only where the business is both regulated elsewhere and the unfair acts and practices are therein prohibited."[101]

The ACSA provides that "[a] controlled substance classified under federal law or in a schedule set out in AS 11.71.140--11.71.190 may not be . . . dispensed, or distributed other than for a medical purpose."[102] Additionally, it creates criminal liability

---

[95] Docket 35 (SEALED) at 35–36.
[96] Alaska Stat. § 45.50.481(a)(1).
[97] *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019).
[98] *Id.* (internal quotations and citations omitted).
[99] *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 186 (Alaska 1980).
[100] *Adkins*, 444 P.3d at 195.
[101] *Id.* (internal citations omitted).
[102] Alaska Stat. § 17.30.080(a).

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 20

Case 3:23-cv-00233-JMK    Document 73    Filed 05/22/24    Page 20 of 28

for "[a] person who [violates the medical purpose provision], or who otherwise . . . dispenses . . . a controlled substance in the state without fully complying [the federal Controlled Substances Act], and regulations adopted [thereunder] . . . ."[103]  The State's Complaint alleges that the mail order pharmacy violated the CPA by "failing to maintain effective controls against diversion of opioids . . . in violation of the CSA and ACSA, although they had a duty to do so under the ACSA."[104]  Specifically, the State alleges that Express Script's mail order pharmacy failed to meet its duty under the ACSA and CSA to recognize signs warning that a prescription was not written for a legitimate medical purpose and investigate the legitimacy of a prescription in those circumstances.[105]

Express Scripts' mail order pharmacy is not exempt from the CPA claim alleged in this case because the acts for which the State seeks to impose liability are not subject to "ongoing, careful" regulation.  The ACSA generally requires that prescription drugs be dispensed for a medical purpose and creates criminal liability dispensing drugs without a medical purpose of failing to comply with federal law and regulations.  But, beyond these prohibitions, it does not regulate how prescription drugs must be dispensed.  Accordingly, there is not "ongoing, careful regulation" and Express Scripts' mail order pharmacy is not exempt from the State's CPA claim.

---

[103]  Alaska Stat. § 17.30.080(b).
[104]  Docket 24 (SEALED) at 51.
[105]  *Id.* at 39–41.

*The State of Alaska v. Express Scripts, Inc. et al.*                          Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                          Page 21
Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 21 of 28

**C.** **The State's Claims Are Partially Preempted by Medicare Part D, But Not ERISA**

Finally, Express Scripts argues that the State's claims against Express Scripts as a PBM are expressly preempted by the Employee Retirement Income Security Act ("ERISA") and the Medicare Act.[106]

**(1)** **ERISA does not preempt the State's claims**

Express Scripts contends that the State's claims impermissibly "relate to" and reference ERISA plans.[107] The State counters that ERISA preemption does not apply.[108]

The provisions of ERISA "supersede any and all State laws insofar as they . . . relate to any employee benefit plan . . . ."[109] This includes "all state common law causes of action . . . ."[110] While the language of ERISA's express preemption clause is broad, "the need for workable standards has led the U.S. Supreme Court to reject 'uncritical literalism' in applying the clause."[111] Accordingly, the Court has instructed that ERISA preempts "two categories of state laws."[112] "First, ERISA pre-empts a state law if it has a 'reference to' ERISA plans[,]" that is, "where a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation."[113]

---

[106] Docket 28 at 29–35.
[107] *Id.* at 29–33.
[108] Docket 35 (SEALED) at 36–41.
[109] 29 U.S.C. § 1144(a).
[110] *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1420 (9th Cir. 1991) (citing 29 U.S.C. § 1144(c)(1)).
[111] *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016) (quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656, (1995)).
[112] *Id.* at 319.
[113] *Id.* at 319–20.

*The State of Alaska v. Express Scripts, Inc. et al.*     Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss     Page 22

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 22 of 28

"Second, ERISA pre-empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that governs [] a central matter of plan administration or interferes with nationally uniform plan administration."[114]

ERISA does not preempt the State's suit under either of these two prongs. Under the first "reference to" prong, state law is preempted where "the existence of ERISA plans is essential to the law's operation" or if "the existence of [an ERISA-covered] plan is a critical factor in establishing liability" and there would be "no cause of action if there [was] no plan."[115] Here, the existence of ERISA-covered plans is not essential to the State's claims. The State's Complaint addresses Express Scripts' conduct with respect to formularies that it offers to insurers and plan sponsors. Although a portion of the plan sponsors that adopt Express Scripts' formularies are covered by ERISA, the State's causes of action would persist with or without ERISA-covered plans as they would proceed with respect to Express Scripts' formularies adopted by plans offered by government or religious entities, Medicare and Medicaid plans, and individual plans offered by insurers, such as ACA exchange plans.[116]

In *Rutledge v. Pharmaceutical Care Management Association*,[117] the U.S. Supreme Court came to a similar conclusion, deciding that an Arkansas law regulating the price at which PBMs reimburse pharmacies for the cost of prescription drugs covered by

---

[114] *Id.* at 320 (internal quotations and citations omitted).

[115] *Id.* at 319–20; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139–40 (1990).

[116] *See* 29 U.S.C. § 1003 (specifying that ERISA regulates plans provided by private employers); *see also* 29 U.S.C. § 1003 (excepting governmental plans and church plans, among others).

[117] 592 U.S. 80 (2020).

*The State of Alaska v. Express Scripts, Inc. et al.*                          Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                          Page 23

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 23 of 28

health plans "does not act immediately and exclusively upon ERISA plans because it applies to PBMs whether or not they manage an ERISA plan."[118]  The Court noted that the law regulates PBMs "whether or not the plans they service fall within ERISA's coverage" and specifically gave the counter-example that "PBMs contract with a variety of healthcare plans and programs that are not covered by ERISA, including Medicaid, Medicare, military, and market place plans."[119]  Similarly, in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*,[120] the Court held that a New York law requiring hospitals to collect surcharges from patients covered by a commercial insurer, but not those covered by Blue Cross/Blue Shield did not impermissibly make "reference to" ERISA plans.  The Court reasoned that "[t]he surcharges are imposed upon patients and HMO's, regardless of whether the commercial coverage or membership, respectively, is ultimately secured by an ERISA plan, private purchase, or otherwise, with the consequence that the surcharge statutes cannot be said to make 'reference to' ERISA plans in any manner."[121]  Here, as in both *Rutledge* and *Travelers*, the State's claims with respect to Express Scripts' formularies cannot be said to make "reference to" ERISA plans as they address formularies regardless as to whether they are adopted by an ERISA plan or a non-ERISA plan.

Under the second "connection with" prong, a state law has an impermissible connection with ERISA plans if "acute, albeit indirect, economic effects" of the state law

---

[118] *Id.* at 88.
[119] *Id.* at 89, 89 n.1.
[120] 514 U.S. 645 (1995).
[121] *Travelers*, 514 U.S. at 656.

*The State of Alaska v. Express Scripts, Inc. et al.*                                                      Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                             Page 24

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 24 of 28

"force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers."[122]   Put differently, a state law has an impermissible connection with ERISA if it would "require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits, or by binding plan administrators to specific rules for determining beneficiary status."[123]   However, ERISA does not preempt state law "if a law merely affects costs" or "alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage."[124]

The State's claims do not have an impermissible "connection with" ERISA plans as they do not dictate any particular scheme of substantive coverage.  True, the State's claims target Express Scripts' plan administration.  For example, the State alleges that Express Scripts structured their formularies in a manner that increased opioid usage, such as by placing opioids as preferred drugs and changing prior authorization requirements and other requirements that would limit access to opioids.[125]   But the State's success on its claims would not dictate any particular scheme of coverage.  Although the State seeks injunctive relief barring Express Scripts from engaging in further deceptive acts or practices and from engaging the conduct that caused the alleged public nuisance, an injunction would not require Express Scripts to cover alternative, non-medication treatments, cover less addictive treatments, or otherwise structure benefit plans in any

---

[122] *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. at 320.
[123] *Rutledge*, 592 U.S. at 86–87 (2020) (internal citations omitted); *see also Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023) (internal quotation and citation omitted) (concluding state laws governing PBMs preempted where "they at least eliminate the choice of one method of structuring benefits").
[124] *Id.* at 87–88.
[125] Docket 24 (SEALED) at 31–36.

*The State of Alaska v. Express Scripts, Inc. et al.*          Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss          Page 25
Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 25 of 28

particular way. Indeed, Express Scripts could structure its formularies in the same exact manner as it did prior to this suit. That is because the State's CPA and public nuisance claims are not merely based on the structure of the formularies, but on the manner in which Express Scripts arrived that their structure: allegedly by ignoring evidence that suggested the need for utilization management due to its financial agreements with manufacturers and desire for profits.[126]

### (2) Medicare Part D preempts the State's claims with respect to Medicare Part D plans

Finally, Express Scripts argues that the State's claims are preempted insofar as they seek to impose liability based on Express Scripts' PBM relationships with plans covered by Medicare Part D.[127] Express Scripts contends that the State's claims with respect to formularies implicate "standards established" under Medicare because all Medicare plan formularies must be approved by the Centers for Medicare and Medicaid Services ("CMS").[128] The State responds that the Medicare Act does not preempt its claims because they do not implicate Medicare standards and that it has expressly disclaimed that it is seeking recovery for Express Scripts' provision of services for federal programs.[129]

Medicare Part D incorporates the express preemption clause in Medicare Part C.[130] The clause provides that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating

---

126 *See id.* at 31–36.
127 Docket 28 at 33.
128 *Id.* at 29–35.
129 Docket 35 (SEALED) at 41–42.
130 *See* 42 U.S.C. § 1395w-112(g) (incorporating by reference 42 U.S.C. § 1395w-26(b)(3)).

*The State of Alaska v. Express Scripts, Inc. et al.*                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss          Page 26
Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 26 of 28

to plan solvency) with respect to [Part D] plans which are offered by [Plan D plan sponsors] under this part."[131]  "The federal scheme preempts a state law when (1) Congress or the Centers for Medicare and Medicaid Services (CMS) has established 'standards' in the area regulated by the state law; and (2) the state law acts 'with respect to' those standards."[132]

Express Scripts contends that the State's claims act "with respect to" CMS standards because they seek to impose liability based on how Express Scripts selected and priced drugs on Medicare Part D formularies, which CMS regulates by providing detailed "standards."[133]  Among other things, CMS regulations require that "[a] Part D sponsor that uses a formulary under its qualified prescription drug coverage" must meet requirements, including requirement that "a Part D sponsor's formulary must be developed and reviewed by a pharmacy and therapeutic committee that . . . [b]ases clinical decisions on the strength of scientific evidence and standards of practice," "[c]onsiders whether the inclusion of a particular Part D drug in a formulary or formulary tier has any therapeutic advantages in terms of safety and efficacy," and "[r]eviews policies that guide exceptions and other utilization management processes, including drug utilization review, quantity limits, generic substitution, and therapeutic interchange."[134]  The State's claims act "with respect to" this standard as they seek to impose liability for the structure of formularies which CMS requires be developed and reviewed in a specific manner.  Accordingly, Medicare Part D

---

[131] 42 U.S.C. § 1395w-26(b)(3); *see* 42 C.F.R. § 423.440(a) (2005).

[132] *Pharm. Care Mgmt. Ass'n v. Rutledge*, 891 F.3d 1109, 1113 (8th Cir. 2018), *rev'd on other grounds*, 592 U.S. 80 (2020) (quoting 42 U.S.C. § 1395w-26(b)(3)); *accord Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1149 (9th Cir. 2010).

[133] Docket 28 at 34.

[134] 42 C.F.R. § 423.120(b)(1).

*The State of Alaska v. Express Scripts, Inc. et al.*                                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 27

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 27 of 28

preempts the State's claims insofar as they seek to impose liability for Express Scripts' administration of Part D plans.

## IV.   CONCLUSION

For the foregoing reasons, the *Motion to Dismiss* is **GRANTED IN PART AND DENIED IN PART**.  The State may maintain its public nuisance and CPA claims insofar as they do not implicate Medicare Part D plans.  Additionally, the State's oral Motion to Stay is **DENIED**.

IT IS SO ORDERED this 22nd day of May, 2024, at Anchorage, Alaska.


_____
        */s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*The State of Alaska v. Express Scripts, Inc. et al.*                                    Case No. 3:23-cv-00233-JMK
Order Granting in Part and Denying in Part Express Scripts' Motion to Dismiss                    Page 28

Case 3:23-cv-00233-JMK   Document 73   Filed 05/22/24   Page 28 of 28