# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

THE STATE OF ALASKA,

               Plaintiff,

      v.

EXPRESS SCRIPTS, INC.;
EXPRESS SCRIPTS
ADMINISTRATORS, LLC; MEDCO
HEALTH SOLUTIONS; ESI MAIL
PHARMACY SERVICES; and
EXPRESS SCRIPTS PHARMACY,
INC.,

               Defendants.

Case No. 3:23-cv-00233-SLG

## ORDER ON PARTIAL MOTION TO DISMISS AND MOTION FOR PARTIAL STAY

Before the Court are two motions filed by Defendants Express Scripts, Inc.,

Express Scripts Administrators, LLC, Medco Health Solutions, ESI Mail Pharmacy

Services, and Express Scripts Pharmacy, Inc. (collectively, "Express Scripts").  At

Docket 77 is Express Scripts' Partial Motion to Dismiss for Failure to State a Claim,

to which Plaintiff State of Alaska ("State") filed a response in opposition at Docket

84, and Express Scripts replied at Docket 86.[1]  At Docket 83 is Express Scripts'

Motion for a Partial Stay, which the State opposed at Docket 85.  Express Scripts

---

[1] The State filed notices of supplemental authority related to the partial motion to dismiss at Dockets 92 and 107, to which Express Scripts responded at Dockets 93 and 109, respectively. Express Scripts filed a notice of supplemental authority related to the partial motion to dismiss at Docket 110, to which the State did not respond.

replied at Docket 87.[2]  Oral argument on both motions was held on September 10, 2024.[3]  For the reasons set forth below, the partial motion to dismiss is DENIED IN PART and GRANTED IN PART, and the motion for a partial stay is DENIED.

## BACKGROUND

The State brings this action against Express Scripts for its alleged role in the opioid crisis.  The facts, as pled in the State's Second Amended Complaint and taken as true for the purposes this partial motion to dismiss, are as follows:

Express Scripts is a Pharmacy Benefits Manager ("PBM"), an administrator hired by third-party payors, such as government entities, insurers, and employers, to administer prescription drug programs.[4]  In its capacity as a PBM, Express Scripts designs prescription drug benefits programs and creates formularies, or lists of prescription medications that set the terms under which pharmaceutical drugs are covered and reimbursed under health plans.[5]  Additionally, Express

---

[2] Express Scripts filed a notice of supplemental authority related to the motion for a partial stay at Docket 105, to which the State responded at Docket 106.

[3] Docket 91; *see also* Docket 103 (Oral Arg. Tr.).

[4] Docket 72 (2d Am. Compl.) (SEALED) at ¶¶ 15–17.  For ease of reference, the Court cites to the sealed Second Amended Complaint, on which Express Scripts' partial motion to dismiss is based. A public version of the Second Amended Complaint with identical paragraph numbering is available at Docket 80.

[5] Docket 72 (SEALED) at ¶¶ 26, 63–67.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 2 of 50

Scripts controls a network of retail pharmacies, including pharmacies in Alaska.[6] And it independently dispenses prescription medications through its mail-order pharmacy.[7]

The State alleges that Express Scripts substantially contributed to the opioid epidemic in Alaska in its capacity as a PBM, a research provider, and a mail-order pharmacy.[8] First, it asserts that Express Scripts colluded with opioid manufacturers to increase prescription opioid sales in Alaska by favorably placing certain opioids on its formularies and by not implementing utilization management ("UM") practices that would have reduced the illegitimate use and dissemination of these drugs.[9] Second, the State alleges that, by virtue of Express Scripts' position as a middleman in the prescription drug market, it collected vast troves of data regarding prescribing practices and patient drug use and, despite indications of opioid abuse and diversion in this data, failed to take any steps to address these issues.[10] Additionally, the State asserts Express Scripts aided opioid

---

[6] Docket 72 (SEALED) at ¶ 22.

[7] Docket 72 (SEALED) at ¶ 23.

[8] Docket 72 (SEALED) at ¶¶ 13, 30, 35

[9] Docket 72 (SEALED) at ¶¶ 75–97, 152–96.

[10] Docket 72 (SEALED) at ¶¶ 98–129.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al*.
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 3 of 50

manufacturers in misleading marketing efforts.[11] Finally, the State alleges that Express Scripts dispensed opioids from its mail-order pharmacy to high-volume prescribers despite data that indicated that prescriptions from these providers were not written for medically legitimate purposes.[12]

On August 31, 2023, the State commenced this action in Alaska Superior Court and asserted two state law claims—one for public nuisance and one for violations of the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPA").[13] Express Scripts then removed the suit to this Court on the basis of federal officer removal and federal question jurisdiction.[14] The State then amended its complaint to disclaim liability in connection with Express Scripts' contracts with federal agencies.[15]

Express Scripts moved to dismiss the First Amended Complaint ("FAC") for failure to state a claim.[16] After briefing and argument, the Court granted in part

---

[11] Docket 72 (SEALED) at ¶¶ 130–51.

[12] Docket 72 (SEALED) at ¶¶ 208 –19.

[13] Docket 1-1.

[14] Docket 1 at 2 (first citing 28 U.S.C. § 1442(a); and then citing 28 U.S.C. § 1441(c)).

[15] *See* Docket 18 at ¶ 32.

[16] Docket 28.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 4 of 50

and denied in part that motion to dismiss on May 22, 2024.[17]  The Court held that the State may maintain its public nuisance and UTPA state law claims insofar as they do not implicate Medicare Part D plans, because Medicare Part D preempts the State's claims with respect to those plans.[18]  The Court also denied the State's oral motion to stay the case pending resolution of an Alaska state court appeal.[19]

While the motion to dismiss the FAC was pending, the State moved to amend its complaint to add an additional claim for violation of the federal Racketeer-Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*[20]  The Court granted the State's motion for leave to amend on May 21, 2024.[21]  The State then filed its Second Amended Complaint ("SAC" or "Complaint"), which added a RICO claim based on mail and wire fraud and violations of the Controlled Substances Act.[22]

---

[17] Docket 73.

[18] *See* Docket 73 at 26–28.

[19] Docket 73 at 2.

[20] *See* Docket 56.  The State also previously moved to remand this action to state court, but that motion was mooted by the State's amendment of its complaint to add the RICO claim. *See* Docket 30.

[21] Docket 71.

[22] Docket 72 (SEALED) at ¶¶ 404–35.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 5 of 50

Express Scripts now moves to dismiss the State's RICO claim for failure to state a claim,[23] and also moves, as the State did previously, for a partial stay of this action pending resolution of a similar case before the Alaska Supreme Court.[24]

## LEGAL STANDARDS

### I. Dismissal for Failure to State a Claim

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim for which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[26]

### II. Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time

---

[23] Docket 77.

[24] Docket 83.

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[26] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 6 of 50

and effort for itself, for counsel, and for litigants."[27]   "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."[28]

In deciding whether to grant a stay, the Ninth Circuit instructs courts to weigh "the competing interests which will be affected," which include (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[29]  "The proponent of a stay bears the burden of establishing its need"[30] and "must make out a clear case of hardship or inequity in being required to go forward, if there is

---

[27] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

[28] *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (citations omitted).

[29] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

[30] *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citation omitted).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 7 of 50

even a fair possibility that the stay . . . will work damage to some one else."[31] "Generally, stays should not be indefinite in nature" and "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time."[32]

## DISCUSSION

### I.  Motion to Dismiss the State's RICO Claim

Express Scripts puts forward three arguments for dismissal of the State's RICO claim.  Express Scripts first contends that the State's request for injunctive relief is precluded by Ninth Circuit precedent.  Second, Express Scripts contends that the State's RICO claim for damages is time-barred. And third, Express Scripts contends that the State fails to plausibly allege the elements of a RICO claim, including RICO's statutory standing requirements.  The Court addresses each contention in turn.

#### A. Ninth Circuit Precedent Bars the State's Claim for Equitable Relief Under RICO

As part of its RICO claim, the State seeks "all legal and equitable relief as allowed by law, including . . .  equitable and/or injunctive relief."[33]  Express Scripts

---

[31] *Landis*, 299 U.S. at 255.

[32] *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quotation marks and citations omitted).

[33] Docket 72 (SEALED) at ¶ 435.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al*.
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 8 of 50

contends that this request for equitable relief is barred by Ninth Circuit precedent; specifically, Express Scripts asserts that *Religious Technology Center v. Wollersheim* bars civil RICO claims that seek any form of equitable relief by plaintiffs other than the U.S. Attorney General.[34]  In response, the State urges the Court to adopt the view that *Wollersheim* addressed only whether private plaintiffs may seek *injunctive* relief, leaving other forms of *equitable* relief still available to private plaintiffs.[35]

In *Wollersheim*, the Ninth Circuit analyzed the text, structure, and legislative history of the RICO statute and concluded that injunctive relief is not available to private plaintiffs.[36]  The Ninth Circuit emphasized that Congress allowed private plaintiffs to recover treble damages, costs, and attorney's fees in 18 U.S.C. § 1964(c), but omitted any mention of equitable relief from that section.[37]  This

---

[34] Docket 77 at 13 (citing 796 F.2d 1076, 1081–89 (9th Cir. 1986)).

[35] Docket 84 at 18–19. The State also asserts that "the Court need not reach the question of whether *Wollersheim* extends to the State's requests for equitable relief under RICO" because the Court has already found that the State may seek injunctive relief based on its State law claims.  Docket 84 at 21.  The State's entitlement to seek an injunction on its state law claims does not resolve the issue for RICO purposes.

[36] 796 F.2d at 1080–89. The State brings this suit pursuant to the private plaintiff provision of RICO, 18 U.S.C. § 1964(c). Docket 72 (SEALED) at 104.

[37] *Wollersheim*, 796 F.2d at 1082.  18 U.S.C. § 1964(c) provides, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al*.
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 9 of 50

omission is significant, particularly given that § 1964(b) of the RICO statute expressly empowers the U.S. Attorney General to bring actions for equitable relief.[38] The court reasoned that, had Congress intended to create a private equitable cause of action, it would have included equitable relief as an enumerated remedy in the private action provision.[39] Additionally, any alternative reading of the statute's text was foreclosed by its legislative history.[40] The Ninth Circuit therefore held that "Congress did not intend to give private RICO plaintiffs any right to injunctive relief."[41]

Although *Wollersheim* only expressly involved injunctive relief, its reasoning applies with equal force to all forms of equitable relief. The statutory text of § 1964(a) lists various forms of equitable relief available to the Attorney General; it is not limited to injunctive relief. And, as the court stated in *Wollersheim*, "the inclusion of a single statutory reference to private plaintiffs, and the identification of a damages and fees remedy for such plaintiffs in part (c), logically carries the negative implication that *no other remedy* was intended to be conferred on private

---

[38] *Id.* at 1082–83.

[39] *Id.* at 1083.

[40] *Id.* at 1084–87.

[41] *Id.* at 1088.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 10 of 50

plaintiffs."[42]  The Court therefore finds that *Wollersheim* bars all equitable relief for private plaintiffs alleging civil RICO claims.   In so finding, this Court joins the many other district courts within this circuit that have read *Wollersheim* the same way.[43]

Accordingly, the Court GRANTS Defendants' partial motion to dismiss as it pertains to the State's RICO claim for equitable relief.

### B. The State's RICO Claim for Damages is Not Dismissed as Time-Barred

Because the State cannot seek equitable relief under RICO, the remaining portion of the State's RICO claim is a claim for damages and is subject to a four-year statute of limitations.[44]  The question of when a RICO damages claim begins to accrue is governed by the "injury discovery" rule.[45]  Under this rule, RICO claims

---

[42] *Id.* at 1083 (emphasis in original).

[43] *See Estados Unidos Mexicanos v. Diamondback Shooting Sports Inc.*, Case No. No. CV-22-00472-TUC-RM, 2024 WL 1256038, at *11 (D. Ariz. Mar. 25, 2024) ("[P]rivate RICO plaintiffs are limited to recovering damages, costs, and fees, and cannot obtain equitable relief."); *Holmes High Rustler, LLC v. Gomez*, Case No. 15-cv-02086-JSC, 2015 WL 4999737, at *6 (N.D. Cal. Aug. 21, 2015) ("[W]hile *Wollersheim* itself does not hold that declaratory relief is unavailable, its reasoning compels that conclusion."); *State Comp. Ins. Fund v. Khan*, Case No. SACV 12-01072-CJC(RNBx), 2012 WL 12887395, at *4 (C.D. Cal. Dec. 28, 2012) ("Although *Wollersheim* only presented the question of injunctive relief, the Ninth Circuit indicated that its reasoning would apply more broadly to all equitable relief."); *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1018 (E.D. Cal. 2010) ("The only remedy for a civil RICO violation brought by an individual, rather than the Attorney General, is treble damages, costs, and attorneys' fees.").

[44] *Agency Holding Corp v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).

[45] *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996) (holding that the "injury discovery" rule is the accrual rule for a civil RICO claim); *see also Rotella v. Wood*, 528 U.S. 549, 554 n.2 (2000) (leaving the Ninth Circuit's injury discovery rule intact).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al*.
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 11 of 50

accrue when the plaintiff either knows or should have known of its injury.[46]  In other words, the four-year RICO limitations period is triggered by the actual or constructive "discovery of the injury, not discovery of the other elements of a claim."[47]

The parties here agree that the "injury discovery" rule applies, but disagree about whether application of the rule renders the State's RICO damages claim time-barred.[48]  Express Scripts points to the State's allegations that opioid-related deaths rose steadily over the past two and a half decades, as well as public announcements by Alaska's governor in 2017 and the Centers for Medicare and Medicaid Services in 2011 about the harmful proliferation of opioids, to support its contention that  "the State discovered its alleged injury over a decade ago."[49]  Express Scripts also asserts that "the State's prior opioid litigation confirms the State was on notice of its alleged injuries by *at least* October 2017," when the State filed a lawsuit against Purdue claiming injuries based on the proliferation of prescription opioids.[50]

---

[46] *Rotella*, 528 U.S. at 553.

[47] *Id.* at 555.

[48] Docket 77 at 14–19; *see* Docket 84 at 23–26.

[49] Docket 77 at 14–16.

[50] Docket 77 at 18 (emphasis in original).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 12 of 50

In response, the State invokes three doctrines: *nullum tempus*, the separate-accrual rule, and the equitable tolling doctrine of fraudulent concealment.[51] The State further argues that resolving a statute of limitations defense involves fact questions that cannot be decided on a Rule 12(b)(6) motion,[52] to which Express Scripts replies that "there are no 'disputed facts' regarding the State's knowledge" of its injuries, and that dismissal at this stage is warranted because "the running of the statute is apparent on the face of the [State's] complaint."[53]

In deciding a motion to dismiss based on the statute of limitations, a court may only grant the motion "if, accepting all well-pled facts in the complaint as true, 'it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'"[54] Here, the State does not concede that it knew of its injury more than four years before it filed its initial complaint,[55] but in its briefing relies on doctrines to excuse, extend, or toll the limitations period.[56]

---

[51] Docket 84 at 21–26.

[52] *See* Docket 84 at 24, 26.

[53] Docket 86 at 15 (alteration in original) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

[54] *See United States v. Page*, 116 F.4th 822, 826 (9th Cir. 2024) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)).

[55] *See* Docket 84 at 23 n. 2, 24 n. 3.

[56] Docket 84 at 21–26.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 13 of 50

The Court agrees with Express Scripts that the SAC, taken as true for the purposes of this motion, establishes that the State knew of at least some of its injuries before August 2019.[57]  Take, for example, the State's alleged injury of the "[c]osts associated with providing police officers, firefighters, and emergency and/or first responders with naloxone, an opioid antagonist used to block the deadly effects of opioids in the context of overdose."[58]  The Complaint alleges that in the one-year period "from June 1, 2017 to May 31, 2018, Emergency Medical Services and law enforcement administered 550 doses of Narcan, [(a brand of naloxone),] and Project Hope, a state-wide program to get Narcan into the hands of heroin users, distributed 7,082 kits in Alaska."[59]  This allegation establishes that the State was purchasing naloxone, and therefore knew or should have known that it was incurring costs associated with those purchases, before May 31, 2018.  The Court also agrees with Express Scripts that the State's complaints against opioid manufacturers and distributors, which the Court may consider on this motion to dismiss, assert many of the same opioid-related harms alleged here and show the

---

[57] Express Scripts assumes *arguendo* in its briefing that the State's "new RICO claim relates back to the August 2023 original complaint."  Docket 77 at 15–16. Because that issue is not determinative, the Court also assumes without deciding that the SAC relates back to the initial filing.

[58] Docket 72 (SEALED) at ¶ 431.

[59] Docket 72 (SEALED) at ¶ 228.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 14 of 50

State's knowledge of its injuries as early as 2017.[60]  The Court thus turns to each of the State's arguments for extending the statute of limitations in turn.

### 1.  *Nullum Tempus*

First, the State contends that the doctrine of *nullum tempus* excuses the State, as a sovereign, from the operation of the RICO statute of limitations because Congress has not "explicitly subjected" states to RICO's statute of limitations.[61] Express Scripts, on the other hand, asserts that *nullum tempus* is a privilege that "the sovereign grants *itself* to excuse non-compliance with its *own* statutes of limitation," and therefore does not excuse the State from compliance with a "*federal* statute of limitations."[62]

The Court finds persuasive Express Scripts' argument that the doctrine does not—and, under the Supremacy Clause, could not—insulate the State from statutes of limitations applicable to federal laws.[63]  Moreover, even if *nullum*

---

[60] The Court takes judicial notice of the State's October 30, 2017 state court complaint against Purdue, which was filed in this action at Docket 58-3, and the State's October 25, 2018 state court complaint against certain opioid distributors, which was filed in this action at Docket 58-4. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("[I]t is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss.").

[61] Docket 84 at 21–22.

[62] Docket 86 at 12–13 (emphasis in original) (citing *Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 132 (1938)).

[63] *See Am. Soc'y Composers v. Pataki*, 930 F. Supp. 873, 879 (S.D.N.Y. 1996) ("Under the Supremacy Clause, the state has no power to resist Congress's determination of fairness as

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 15 of 50

*tempus* could release a state from a federal statute of limitations, it "does not apply when the government seeks to vindicate a private right."[64]  Here, the State brings its RICO claim as to its private property interests pursuant to 18 U.S.C. § 1964(c),[65] so *nullum tempus* does not apply.

## 2.  Separate Accrual Rule

Second, the State contends that its RICO claim is timely pursuant to the separate accrual rule.  When the Ninth Circuit adopted the "injury discovery" rule in *Grimmett v. Brown*, it retained the "separate accrual rule" as a second part of the RICO accrual analysis.[66]  The separate accrual rule "provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before."[67]  For the separate accrual rule to apply, a plaintiff must identify a "new overt act[]" within the limitations

---

embodied in the federal statute of limitations . . . ."); *Citgo Petroleum Corp. v. Ranger Enterprises, Inc.*, 573 F. Supp. 2d 1114, 1122 (W.D. Wis. 2008) (concluding "[a] state law that would effectively vacate a federal statute of limitations" is barred by the Supremacy Clause).

[64] *Wash. Metro. Area Tr. Auth. v. Ark Union Station, Inc.*, 268 F. Supp. 3d 196, 201 (D.D.C. 2017) (citing *United States v. Beebe*, 127 U.S. 338, 344 (1888)).  In response to this point, the State asserts that it seeks to recover costs incurred in its sovereign capacity. Docket 84 at 22. However, as discussed *infra* Section I(C)(1), the Ninth Circuit has held that RICO does not provide a cause of action for the State to recover such sovereign expenses.

[65]  State and local entities asserting civil RICO claims are limited to the private right of action in § 1964(c), based on their status as an "individual or entity capable of holding a legal or beneficial interest in property." *See* 18 U.S.C. § 1961(3).

[66] *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996).

[67] *Id.* at 510.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al*.
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 16 of 50

period, which must (1) "be a *new and independent* act that is not merely a reaffirmation of a previous act" and (2) "inflict new and accumulating injury on the plaintiff."[68]

Because the State fails to identify which, if any, of Express Scripts' acts constitutes a new overt act inflicting a new injury within the limitations period, the Court finds that the separate accrual rule does not apply. The SAC contains specific, dated allegations of certain acts by Express Scripts, but those allegations all pre-date August 2019 and therefore fall outside of the four-year limitations period.[69] And because the State fails to identify a "new and independent act" after August 2019, it does not (and logically cannot) point to any "new and accumulating injur[ies]" caused by such an act.[70] Nor does the State's allegation that Express Scripts' injurious conduct is "ongoing" warrant application of the separate accrual

---

[68] *Id.* at 512–13 (emphasis in original).

[69] *See e.g. Docket 72* (SEALED) at ¶ 170 ("While [Express Scripts] represents publicly that it approves drugs for its formulary offerings through exhaustive clinical review based on their efficacy and appropriateness, as well as cost, it was actually rebates that drove its decisions. For instance, as late as 2014, [Express Scripts] notified Purdue that it was reviewing its standard commercial formulary for opioids and 'would require deeper discounts to retain OxyContin Preferred status.'"); ¶¶ 186–88 (alleging specific failures to impose UM restrictions in 2002, 2009, 2010, 2012, 2014, and 2016); ¶ 202 ("While ESI publicly asserts that efforts to curb opioid abuse and misuse remain its highest priorities, its 2018 standard formulary still afforded OxyContin, one of the most frequently diverted opioids, preferred alternative status over other long-acting opioids."); ¶ 217 (alleging that Express Scripts mail order pharmacy diverted prescription-controlled substances into illicit channels from 2002 through 2006).

[70] *See Grimmett*, 75 F. 3d at 512–13.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 17 of 50

rule, as the State asserts it does; on the contrary, that allegation reaffirms that the alleged acts that continued into the limitations period are "part of the same . . . scheme" and "cannot therefore form the basis for a separate cause of action."[71] Accordingly, the Court finds that the State fails to allege facts supporting the application of the separate accrual rule. However, because it is not clear that the "complaint could not be saved by any amendment" as to this theory of timeliness, the Court will provide the State an opportunity to amend its Complaint to allege facts in support of the application of the separate accrual rule.[72]

### 3. Fraudulent Concealment

The State also contends that its RICO damages claim is tolled under the doctrine of fraudulent concealment. "Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases."[73] Unlike the injury discovery

---

[71] *See id.* at 514. The MDL court—which was not bound by *Grimmett*—reached a different conclusion, finding that "[p]laintiffs' allegations [that the PMB's injurious conduct continued into the limitations period] suffice[d] to defeat the PMB's motion to dismiss." *See In re Nat'l Prescription Opiate Litig.* (*Opioid MDL IV),* Case No. 19-OP-45853, 2024 WL 4912429, at *6 (N.D. Ohio Aug. 22, 2024). The MDL court noted that the plaintiffs would ultimately "have to demonstrate that the predicate acts that 'continued into the limitations period' are separable from acts that took place before, and that injuries allegedly caused by those acts constitute new harms 'over and above' any the Plaintiffs sustained prior to the limitations period." *Id.*

[72] *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

[73] *Grimmett*, 75 F.3d at 514; *see Rotella*, 528 U.S. at 560 ("In rejecting pattern discovery as a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling.").

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 18 of 50

rule, which runs from the discovery of the injury, fraudulent concealment applies when the defendant "actively misled" the plaintiff and the plaintiff had "neither actual nor constructive knowledge of the *facts constituting his cause of action* despite her due diligence."[74]

Although allegations of fraudulent concealment—like all allegations of fraud—must be pled with particularity, "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage."[75]  And the Ninth Circuit has recognized that, "in cases of corporate fraud, plaintiffs will not have personal knowledge of all the underlying facts," such that Rule 9(b)'s particularity requirement "may be relaxed."[76]

Consistent with these principles, the Court finds that State has adequately pleaded its fraudulent concealment allegations, as the State's allegations give "defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that

---

[74] *Grimmett*, 75 F.3d at 514 (emphasis in original) (citation omitted).

[75] *In re TFT LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d 1109, 1120 (N.D. Cal. 2008) (citation omitted).

[76] *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Terra Ins. Co. v. New York Life Inv. Mgmt., LLC,* Case No. C 09-01609 WHA, 2009 WL 2365883, at *3 (N.D. Cal. July 30, 2009).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 19 of 50

they have done anything wrong."[77]   The State alleges that "Express Scripts intentionally undertook efforts to conceal its conduct by misrepresenting its role in the pharmaceutical marketplace as promoting safe and effective use of and appropriate dispensing of opioids,"[78] and specifies that these efforts included:

> (1) manipulating and distorting public information, knowledge, and facts; (2) misrepresenting its role in the pharmaceutical market as promoting safe use and appropriate opioid dispensing; (3) assuring the public and governmental authorities that it was complying with its obligations and was acting to prevent diversion and drug abuse; (4) hiding the true nature of its relationships with the Opioid Enterprise Manufacturers; (5) failing to make public or otherwise produce nonpublic information, over which Express Scripts had exclusive possession, dominion, and control, that would have revealed the truth; (6) entering into overly broad confidentiality agreements with entities in the supply chain with whom it contracted; and (8) by deliberately and fraudulently concealing the truth.[79]

These allegations, if proven, could establish that Express Scripts engaged in wrongful concealment of the facts underlying the State's claim for relief.

---

[77] *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007); *see also Opioid MDL IV*, 2024 WL 4912429, at *8 (finding that nearly identical allegations met Rule 9(b)'s pleading requirements); *City of Boston v. Express Scripts, Inc.*, Case No. 24-cv-10525-PBS, 2025 WL 457794, at *6  (D. Mass. Feb. 11, 2025) (same).

[78] Docket 72 (SEALED) at ¶ 347.

[79] Docket 72 (SEALED) at ¶¶ 350–51. The Court noted in its prior order that "the State's allegations concerning Express Scripts' deceptive marketing include at least one assertion that Express Scripts made knowingly false statements of fact and may constitute allegations of fraud." Docket 73 at 18 (citing Docket 24 at 30). The Court held then that "the State pleads this allegation with particularity." *Id.*

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 20 of 50

Express Scripts asserts that the State's previous cases against opioid manufacturers and distributers in 2017 and 2018, and by another plaintiff against Express Scripts in 2018,[80] show that "the asserted injuries have not been concealed from the State" and thus preclude tolling based on the fraudulent concealment doctrine.[81] The Court rejects this assertion for two reasons.

First, Express Scripts appears to conflate the State's discovery of its injury with the sort of "actual or constructive notice" that would make tolling improper. The relevant inquiry for fraudulent concealment purposes is whether the State had actual or constructive notice of the "the facts constituting [its] cause of action" against Express Scripts—not only its injury.[82] As previously noted, the State's prior complaints against other entities in the opioid distribution chain show that the State had knowledge of at least some of its alleged injuries by 2017, but they do not show the State's knowledge of the facts underlying its claim against Express Scripts.[83] Because the State has adequately alleged that Express Scripts fraudulently concealed its role in causing the State's injuries, the State's discovery

---

[80] Express Scripts cites a complaint filed by Webb County, Texas, on January 25, 2018, which named Express Scripts and other PBMs as defendants alongside opioid manufacturers and distributors. *See* Docket 77 at 19 (citing Docket 58-1). The Court takes judicial notice of the *Webb County* complaint, which was filed in this action at Docket 58-1.

[81] Docket 77 at 20.

[82] *See Grimmett,* 75 F.3d at 514.

[83] *See* Dockets 58-3—58-4.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 21 of 50

of its injuries does not preclude tolling of its claims against Express Scripts under the fraudulent concealment doctrine.

Second, whether a different plaintiff's filing of a case against Express Scripts in 2018 was sufficient to give the State constructive knowledge of its claim is a factual question inappropriate for resolution on a motion to dismiss.[84]  Although "[t]he filing by others of a similar lawsuit against the same defendants may in some circumstances suffice to give notice,"[85] the Ninth Circuit has twice rejected the argument that a plaintiff's knowledge of the existence of such a lawsuit is automatically sufficient to start the statute of limitations clock.  In *Conmar*, the Ninth Circuit held that the filing of a similar complaint, even if the plaintiff had known of it, did "not, as a matter of law, lead to the conclusion that [the plaintiff] should have filed a similar suit, . . . and so the issue of whether the statute of limitations was tolled [was] inappropriate for summary judgment."[86]  The Ninth Circuit then reaffirmed that holding in *E.W. French*.[87]  In both cases, the Circuit Court

---

[84]  *See also Volk,* 816 F.2d at 1417 (the question of constructive knowledge and inquiry notice generally "presents a question for the trier of fact").

[85]  *E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1400 (9th Cir. 1989).

[86]  *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 504 (9th Cir. 1988).

[87]  *See E.W. French*, 885 F.2d at 1400 (holding that the existence of a similar lawsuit and the plaintiff's knowledge of it were "not tantamount to actual or constructive knowledge of the [plaintiff's] claim" and reversing the district court's directed verdict as to fraudulent concealment).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 22 of 50

approvingly discussed *In re Beef Industry Antitrust Litigation*,[88] which held that the filing of a similar lawsuit that received "widespread industry publicity ... was 'not *as a matter of law* tantamount to actual or constructive knowledge of their claim' without awareness of 'some evidence tending to support it.'"[89]

The State here alleges that it "did not and could not have known that Express Scripts developed its national formularies based on profit and rebates, not based on the safety and efficacy of the medications as they claim," until documents related to Express Scripts were produced in the national multidistrict litigation in the Northern District of Ohio and other opioid cases.[90] According to the Complaint, "[t]hese documents—and the facts they contain—have never before been made public, nor have they ever before been in Plaintiff's possession, and not otherwise available to Plaintiff before being produced in discovery."[91] It is thus plausible that the State did not discover—and could not have discovered, given Express Scripts' alleged fraudulent misrepresentations—evidence to support its case against

---

[88] 600 F.2d 1148 (5th Cir.1979), *cert. denied,* 449 U.S. 905 (1980).

[89] *Conmar,* 858 F.2d at 504 (quoting *Beef Indus.,* 600 F.2d at 1171 (emphasis in original)).

[90] Docket 72 (SEALED) at ¶ 350.

[91] Docket 72 (SEALED) at ¶ 350.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 23 of 50

Express Scripts until its counsel received discovery in the MDL.[92]  Because it does

not "appear[] beyond doubt that the plaintiff can prove no set of facts that would

establish the timeliness of the claim,"[93]  the State has adequately pleaded that it

did not have actual or constructive knowledge of the facts underlying its claim for

relief more than four years before it filed suit.

For the reasons above, the Court rejects Express Scripts' position that the

State's RICO damages claim is time-barred on its face.  Express Scripts'

arguments as to the nonapplicability of fraudulent concealment are better reserved

for summary judgment or for trial.[94]  The partial motion to dismiss is DENIED with

respect to the issue of timeliness.

### C. The State Has Plausibly Alleged the Elements of a Civil RICO Claim, Including Statutory Standing

There are two parts to a private civil RICO claim.  The civil RICO violation is

defined in 18 U.S.C. § 1962, while "RICO standing" is defined in 18 U.S.C.

---

[92] *But see Boston*, 2025 WL 457794, at *6–8 (finding that the City's claims against PBMs were time-barred because the City knew or should have known of its injuries and failed to exercise due diligence in pursuing its rights).

[93] *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

[94] *See Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988) ("Ordinarily, we leave the question of whether a plaintiff knew or should have become aware of a fraud to the jury."); *see also Tanaka v. First Hawaiian Bank*, 104 F. Supp. 2d 1243, 1253 (D. Haw. 2020) ("Plaintiffs' knowledge of the fraud, as with knowledge of the injury, is a question of fact for purposes of the tolling question.").

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 24 of 50

§ 1964(c).[95]  Section 1964(c) requires a plaintiff to show "(1) that his alleged harm qualifies as an injury to business or property; and (2) that his harm was 'by reason of' the RICO violation."[96]  The relevant portion of the substantive RICO statute, § 1962(c), provides that it is "unlawful for any person employed by or associated with any enterprise . . .  to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."[97]

Express Scripts asserts that the State fails to plausibly allege both elements of RICO standing—namely, (1) injury to its business or property and (2) proximate causation.[98]  With respect to the substantive elements, Express Scripts asserts that the State fails to adequately plead (3) a RICO enterprise, (4) Express Scripts' participation in the enterprise's affairs, and (5) predicate acts of racketeering.  The Court addresses each assertion in turn.[99]

### 1.  Injury to Business or Property

---

[95] *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019).

[96] *Painters*, 943 F.3d at 1248 (quoting *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008)).

[97] Broken down, § 1962(c) contains four elements: a defendant must (1) conduct or participate in the conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

[98] Docket 77 at 23–29.

[99] Docket 77 at 29–39.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 25 of 50

To meet RICO's statutory standing requirement, a civil RICO plaintiff must allege a cognizable injury to its "business or property."[100] The SAC pleads 13 types of damages, which the Court groups into the following five categories: (1) losses caused by purchasing or paying reimbursements for opioids that the State would not otherwise have paid for; (2) extraordinary costs to provide additional public services; (3) forced purchases of naloxone; (4) diminished property values; and (5) lost tax revenue.[101]

Express Scripts insists that these damages are all normal government expenditures and are not recoverable as a matter of law under *Canyon County v. Syngenta Seeds, Inc.*[102] In that case, Canyon County alleged that it was damaged by having to spend millions of dollars on health care and criminal justice services for illegal immigrants who had been employed by the defendants in violation of federal law.[103] The Ninth Circuit held that this additional spending on government services did not constitute an injury to Canyon County's business or property.[104]

---

[100] 18 U.S.C. § 1964(c).

[101] In its briefing, the State sorts its injuries into four categories, omitting losses caused by purchasing or paying reimbursements for opioids that the State would not otherwise have paid for. *See* Docket 84 at 27.

[102] 519 F.3d 969, 975 (9th Cir. 2008).

[103] *Id.* at 975.

[104] *Id.* at 976.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 26 of 50

The Court noted that the law "commonly distinguishes between the status of a governmental entity acting to enforce the laws or promote the general welfare and that of a governmental entity acting as a consumer or other type of market participant."[105] Applying that distinction, the Ninth Circuit concluded that "a governmental entity [is not] 'injured in its property' when its spends money to provide public services, given that those services are based on legislative mandates and are intended to further the public interest."[106] The Circuit Court further held that the county did not have a property interest in the public services themselves.[107]

The State responds that the expenses at issue in this case are "extraordinary" and not the sort of typical government expenditures addressed by *Canyon County*.[108] Judge Polster accepted this distinction in the national opioid

---

[105] *Id.*

[106] *Id.*

[107] *Id.* at 977 ("As the County cannot satisfy the requirement of injury to a 'specific property interest' based solely on its expenditure of money to provide public services, we must examine whether the County can claim a property interest in the services themselves. We conclude that the government does not possess a property interest in the law enforcement or health care services that it provides to the public; therefore, a governmental entity is not 'injured in its property' when greater demand causes it to provide additional public services of this type.").

[108] Docket 84 at 29–30.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 27 of 50

MDL.[109]  Although Judge Polster is not bound by the Ninth Circuit's decision, he nonetheless distinguished *Canyon County* on the basis that "the scope and magnitude of the opioid crisis—the illicit drug market and attendant human suffering—allegedly created by Defendants . . . forced Plaintiffs to go far beyond what a governmental entity might ordinarily be expected to pay to enforce the laws or promote the general welfare."[110]  Judge Polster interpreted *Canyon County* to limit what a public entity can recover under RICO, but not to bar recovery for the extraordinary expenses—of a different quantity and quality than normal public expenses—incurred in responding to the opioid crisis.[111]

District courts within the Ninth Circuit have reached varying conclusions on this issue. In *City and County of San Francisco v. Purdue Pharma*, Judge Breyer rejected the distinction between ordinary and extraordinary government expenditures.[112]  He concluded that *Canyon County* established a bright line rule that "governmental entities *cannot* assert a RICO claim based on expenditures or

---

[109] *In re Natl. Prescription Opiate Litig.* (*Opioid MDL II*), Case No. 1:17-MD-2804, 2018 WL 6628898, at *10 (N.D. Ohio Dec. 19, 2018).

[110] *Id.* at *10 ("Not even *Canyon County* established such a bright-line rule.").

[111] *Id.* at *10 (concluding *Canyon County* does not preclude public entities from "recover[ing] costs greatly in excess of the norm," as alleged here, "so long as they can prove the costs were incurred due to Defendants' alleged RICO violations"); *see also Opioid MDL IV,* 2024 WL 4912429, at *13 (addressing claims against PBMs and further distinguishing *Canyon County*).

[112] 491 F. Supp. 3d 610, 651 (N.D. Cal. 2020).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 28 of 50

services provided in their sovereign or quasi-sovereign capacities," even if those expenditures are the result of an epidemic and of a scope far beyond typical government expenditures.[113] Judge Breyer also rejected the City's contention that its purchases of naloxone, opioid screening equipment, training courses and materials for opioid disposal, and buprenorphine were distinct from the services at issue in *Canyon County*, and thus he held that those purchases were not recoverable.[114] Judge Breyer did find that the City had adequately pled injury as to "damage to the City's physical property, such as its main library, and losses incurred in the consumer marketplace," as well as "damage to the City's [commercial parking lot and advertising] businesses in the form of lost revenue and clean-up costs."[115]

In a similar case in the same district, Judge Orrick deferred determining the precise categories of damages available to government-entity plaintiffs for RICO claims arising from the youth vaping epidemic at the motion to dismiss stage.[116] The government-entity plaintiffs alleged that they had "suffered damage directly to

---

[113] *Id.* at 649–51 (emphasis in original).

[114] *Id.* at 652–53.

[115] *Id.* at 648, 653.

[116] *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig. (JUUL I)*, 497 F. Supp. 3d 552, 622 (N.D. Cal. 2020).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 29 of 50

their physical property"—namely, hazardous waste was wrongfully disposed of and littered on their property and they had to install e-cigarette detectors, cameras, and anti-vaping signs around their property.[117] Judge Orrick found that these allegations of injury to the plaintiffs' properties "suffic[ed] to confer [RICO] standing."[118] And he noted that, with the statutory standing question resolved, the scope of RICO damages would be "better determined on a full, evidentiary record" after discovery.[119]

This Court agrees with Judge Breyer that *Canyon County* does not support a distinction between ordinary and extraordinary spending on government services.[120] As Express Scripts points out, many of the costs that the State contends are "extraordinary" mirror those that the Ninth Circuit rejected in *Canyon County*.[121] The State's allegations that it incurred "[c]osts for providing healthcare and medical care," "[c]osts of training emergency and/or first responders," "[c]osts associated with emergency response by police officers, firefighters, and emergency and/or first responders," "[c]osts for providing mental, health services,

---

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *See San Francisco*, 491 F. Supp. 3d at 651 ("[N]othing in *Canyon County* suggests that the Ninth Circuit distinguished between "extraordinary costs" and "ordinary costs.").

[121] *See* Docket 77 at 26.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 30 of 50

treatment, counseling, rehabilitation services, and social services," "[c]osts associated with law enforcement and public safety relating to the opioid epidemic," and "[c]osts associated with increased burden on [the State's] judicial system," are not materially different from the injuries alleged by Canyon County, which alleged that it was "forced … to pay millions of dollars for health care services and criminal justice services" that it would not have incurred but for the defendants' wrongdoing.[122] The State cannot escape *Canyon County*'s holding merely by asserting that it was forced to incur "extraordinary costs" that "greatly exceed the norm."[123] Indeed, the Ninth Circuit in *Canyon County* cited with approval to a case holding that "extraordinary police overtime wage expenses" do not constitute RICO injuries.[124] It is the nature of the injury—not the magnitude of the alleged loss—that matters.

While *Canyon County* bars RICO recovery for the costs of providing government services even when those costs are extraordinary, the Court also reads *Canyon County* to support a distinction between spending on the provision of services by government personnel—including training expenses, salaries and

---

[122] *Compare* Docket 72 (SEALED) at ¶ 431, *with Canyon Cnty.*, 519 F.3d at 971.

[123] *See* Docket 84 at 31.

[124] *Canyon Cnty.*, 519 F.3d at 978 (citing *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 95–98, 103–04 (2d Cir. 1990)).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 31 of 50

wages, and other personnel costs—and other expenditures that the State is forced to undertake in the marketplace. *Canyon County* expressly addressed spending on government services provided by public servants,[125] based on the following animating concern:

> All government actions require the expenditure of money in this sense, insofar as the government acts through public servants who are paid for their services. If government expenditures alone sufficed as injury to property, any RICO predicate act that provoked any sort of governmental response would provide the government entity with standing to sue under § 1964(c)—an interpretation of the statute that we think highly improbable.[126]

Here, the State has alleged that Express Scripts' conduct forced it to do more than simply spend more on government services provided by public servants. Most saliently, the State asserts that it incurred costs to purchase naloxone, "an opioid antagonist used to block the deadly effects of opioids in the context of overdose."[127] The Court finds no suggestion in the *Canyon County* record that the plaintiffs there sought to recover for this type of marketplace purchase.[128] Indeed,

---

[125] *See City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133 (9th Cir. 2020) (reiterating that in "*Canyon County* . . . we decided that a government's expenditures on healthcare and policing services are not an injury to business or property because the government does not have a property interest in the services it provides to enforce law and promote public welfare").

[126] *Canyon Cnty.*, 519 F.3d at 976.

[127] Docket 72 (SEALED) at ¶ 431(e).

[128] Before the district court, "Canyon County . . . admit[ted] that its lawsuit '[was] for the costs of municipal services.'" *Canyon Cnty. v. Syngenta Seeds, Inc.*, Case No. CV05-306-S-EJL, 2005 WL 3440474, at *3 (D. Idaho Dec. 14, 2005), *aff'd*, 519 F.3d 969 (9th Cir. 2008).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al*.
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 32 of 50

this alleged injury—stemming from a commercial transaction with a third party—is categorically different from the general provision of government services. It is also distinct from other marketplace purchases that a government entity might make to support the provision of government services generally, such as the purchase of police cars. The State's marketplace purchases of naloxone relate exclusively to combating the opioid epidemic allegedly fueled by Express Scripts' predicate acts of racketeering. These are not purchases precipitated simply by "greater demand" for "public services" of the type the State already provided.[129] Rather, they are novel consumer expenditures the State has alleged were necessitated by Express Scripts' conduct and intended to combat the effects thereof.

Other of the State's alleged injuries are also not clearly precluded by *Canyon County*, but additional discovery appears necessary to determine the contours of those injuries. The State's allegation that it suffered "[l]osses caused by purchasing and/or paying reimbursements for the Formulary & UM Enterprise Defendants' prescription opioids, that [the State] would not have paid for or purchased but for the Formulary & UM Enterprise Defendants' conduct"[130] appears to describe costs that were allegedly fraudulently induced by Express

---

[129] *See Canyon Cnty.*, 519 F.3d at 977.

[130] Docket 72 (SEALED) at ¶ 431(a); *see* Docket 72 (SEALED) at ¶¶ 255–67 (specifying that the enterprise consisted of Express Scripts and opioid manufacturers)

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 33 of 50

Scripts and incurred by the State in its "capacity as an ordinary marketplace actor[]."[131] This allegation, too, therefore appears to satisfy RICO's injury to business or property requirement, at least at the motion to dismiss stage of this case.[132] And the State's allegation that it suffered "losses caused by diminished property values in neighborhoods where the opioid epidemic has taken root," separate and apart from the State's allegations that it suffered losses from decreased tax revenue, creates the plausible inference that the State has been injured at its *own* property, which is sufficient for RICO standing.[133] Whether decreased tax revenue is a cognizable RICO injury in the Ninth Circuit is less clear.[134] In the absence of both briefing and discovery addressing these injuries, the Court declines to set out the precise contours of the State's recoverable injuries at this stage. The Court instead agrees with Judge Orrick that, because the State

---

[131] *See Canyon Cnty.*, 519 F.3d at 976; *see also* Docket 72 (SEALED) at ¶ 21 (alleging that, as of 2022, Express Scripts serviced Alaska state government health programs).

[132] *See Canyon Cnty.*, 519 F.3d at 976 ("[G]overnment entities that have been overcharged in commercial transactions and thus deprived of their money can claim injury to their property."); *Opioid MDL II*, 2018 WL 6628898, at *10 (emphasis in original) ("[S]ome of Plaintiffs' alleged costs are clearly associated with Plaintiffs' *participation in the marketplace*, and for those costs, Plaintiffs can undoubtedly recover.").

[133] *See* Docket 72 (SEALED) at ¶ 431(m).

[134] *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 4–5 (2010) (denying City recovery of lost tax revenue under RICO based on proximate cause); *Canyon Cnty.*, 519 F.3d 969 (holding that a government entity acting in its sovereign capacity cannot claim to have been injured in its property for RICO purposes based solely on the fact that it has spent money to act governmentally).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 34 of 50

has satisfied its burden to plausibly allege some form of RICO injury, it is prudent to wait to determine with specificity the State's recoverable damages.[135] However, the State's damages will be limited to those that are categorically different from the expenses for government services that the Ninth Circuit has held are not recoverable under RICO.

Accordingly, Express Scripts' motion to dismiss for lack of RICO injury is GRANTED IN PART insofar as the State seeks to recover for increased personnel costs for State employees and DENIED IN PART as to the remaining alleged injuries.

## 2. Proximate Cause

Express Scripts next maintains that the State has not alleged sufficient proximate cause. The proximate cause standard for RICO claims demands some "'direct relation between the injury asserted and the injurious conduct alleged.'"[136] The Ninth Circuit has directed courts to focus on three non-exhaustive factors when considering whether a RICO injury is sufficiently direct: "(1) whether

---

[135] *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, Case No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *8 (N.D. Cal. Oct. 30, 2017) ("[Q]uestions as to the *amount* of damage, as opposed to the plausibility of damage, are best resolved at a later stage in the litigation." (emphasis in original)).

[136] *Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1248–49 (9th Cir. 2019) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 35 of 50

there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries."[137] These factors are "not an elements test," so "even if one factor tips in favor of [one party's position], the totality of the circumstances" can compel a court find in favor of the other party.[138] When factual questions control the outcome of the analysis, the plaintiff "must be allowed to make their case through presentation of evidence."[139]

Because the Court will defer deciding the scope of the State's recoverable RICO injuries until after discovery, and because the proximate cause inquiry scrutinizes the relationship between those injuries and the defendants' conduct, the Court cannot yet determine whether proximate cause will be satisfied as to each of those injuries. In addition, even as to those injuries that the Court has found may be recoverable, such as the costs of purchasing naloxone, the

---

[137] *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169–70 (9th Cir. 2002) (citations omitted) (holding, with respect to the first factor, that "undocumented workers cannot 'be counted on to bring suit for the law's vindication'").

[138] *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1058 (C.D. Cal. 2014).

[139] *Mendoza*, 301 F.3d at 1171.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 36 of 50

proximate cause analysis turns on factual questions that cannot be resolved at the pleadings stage.[140]

Express Scripts urges the Court to instead adopt Judge Breyer's determination in *San Francisco* that the City failed to allege proximate cause in its case against opioid manufacturers.[141]  Notably, however, Judge Breyer's analysis was based on his view that the City's only cognizable injuries under *Canyon County* were damages to its physical property (such as the City library's toilet grinders) and its advertising and parking lot businesses.  These limited injuries, Judge Breyer found, were not "'surely attributable' to Defendants' misconduct."[142]  Instead, the City's injuries resulted from drug-users' separate conduct of improperly discarding needles.  The district court concluded that such "distinct third-party conduct severed any continuity stemming from Defendants' predicate acts, making the relationship between those acts and the City's injury insufficiently direct."[143]

---

[140] *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1055 (9th Cir. 2008) ("Th[e proximate cause factors] are all factual questions, which we cannot resolve on a Rule 12(b)(6) motion in this case.").

[141] Docket 77 at 27–29.

[142] *San Francisco*, 491 F. Supp. 3d at 657 (quoting *City of Oakland*, 972 F.3d at 1132).

[143] *Id.* at 657–58 (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (holding that the causal relationship was insufficiently direct because the plaintiff's asserted harms "were entirely distinct from the alleged RICO violation (defrauding the state)")).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 37 of 50

As discussed above, this Court reads *Canyon County*'s holding more narrowly than Judge Breyer and finds that more of the State's injuries are plausibly recoverable and warrant discovery. This Court's proximate cause analysis therefore is (and, at summary judgment, will be) based on a broader selection of harms than Judge Breyer's.[144] The State will therefore be allowed to test its theory of causation following discovery.

Accordingly, the Court DENIES Express Scripts' motion to dismiss the State's RICO claim based on proximate cause.

### 3. The Existence of a RICO Enterprise

Express Scripts directs its final set of arguments for dismissal at the substantive elements of a civil RICO claim. The first of these arguments is that the State has not plausibly alleged a RICO enterprise. To show the existence of an "association-in-fact" RICO enterprise, "plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity

---

[144] Judge Breyer denied the City recovery for its purchases of naloxone, which, as discussed in this order, this Court will allow at the pleading stage. *See San Francisco*, 491 F. Supp. 3d at 652–53. The Court has also left open the door for the State to recover for additional injuries to the extent they are not clearly precluded by *Canyon County*.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 38 of 50

necessary to accomplish the purpose."[145] "[T]he very concept of an association in fact is expansive."[146]

The State alleges an "association-in-fact" enterprise composed of Express Scripts and manufacturers of prescription opioids including Allergan, Johnson & Johnson/Janssen, Endo, Insys, Mallinckrodt, Purdue, and Teva/Cephalon—the "Formulary & UM Enterprise."[147] Express Scripts contends that these opioid manufacturers cannot share a common purpose because the Complaint states that they are "competitors working against each other," tied together only by their separate contracts with Express Scripts.[148]

As the State points out in response, the Complaint also alleges that the manufacturers cooperated with each other and with Express Scripts in various

---

[145] *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citation omitted).

[146] *Boyle v. United States*, 556 U.S. 938, 944 (2009) (collecting cases holding that RICO is to be read broadly).

[147] *See* Docket 72 (SEALED) at ¶¶ 255–344. UM stands for "utilization management"—a reference to Express Scripts' programs to manage access and use of particular drugs. *See* Docket 72 (SEALED) at ¶¶ 26–27.

[148] *See* Docket 77 at 30–31 (citing Docket 72 (SEALED) at ¶¶ 265–66). Express Scripts proposes that the Court borrow the concept and terminology of "hub-and-spoke" conspiracies from antitrust jurisprudence. Docket 77 at 31–32. In the antitrust context, courts have held that such "hub-and-spoke" conspiracies without a unifying "rim" are not per se violations of the Sherman Act. The Court will not extend this reasoning to the RICO context given that the Supreme Court has rejected the "argument that a RICO enterprise must have structural features in addition to those . . . fairly inferred from the language of the statute," *Boyle v. United States*, 556 U.S. at 947–48, and the Ninth Circuit has counseled that the statutory terms of RICO should not be read narrowly, *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 39 of 50

non-competitive ways to further the common purpose of loosening restrictions on the prescribing and dispensing of prescription opioids and *collectively* profiting as a result.[149]  This Court agrees with the MDL court that, although manufacturers "may have competed over the ever-mushrooming opioid market, that does not shield [Express Scripts] from allegations of racketeering activity in furtherance of a scheme to grow that market."[150]  Nor does a profit motive negate a common purpose.[151]

Express Scripts next asserts that the alleged Formulary & UM Enterprise lacks the requisite structure because it is not "an entity separate and apart from the pattern of activity in which it is engages."[152]  The State responds that the Complaint alleges relationships between Express Scripts and other enterprise members both through informal associations and through formal organizations such as the Pharmaceutical Care Management Association ("PCMA"), and that these relationships are sufficiently structured.[153]

---

[149] *See*, *e.g.*, Docket 72 (SEALED) at ¶ 265.

[150] *In re Nat'l Prescription Opiate Litig.* (*Opioid MDL I*), Case No. 1:18-OP-45090, 2018 WL 4895856, at *17–22 (N.D. Ohio Oct. 5, 2018), *report and recommendation adopted in relevant part*, Case No. 1:17-MD-2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018).

[151] *Id.* at *17.

[152] Docket 77 at 34 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

[153] Docket 84 at 41–42.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 40 of 50

The Court finds that the SAC sufficiently alleges a structure between members of the enterprise that is separate from the alleged pattern of racketeering activity itself.[154] The PCMA allegedly "served as a conduit of information between the Opioid Enterprise Manufacturers and Express Scripts on subjects like access to prescription opioids,"[155] as well as a "clearinghouse for communication, discussion, consensus building and speaking on behalf of the Express Scripts and the Opioid Enterprise Manufacturers who were Affiliate members" of the PCMA.[156] Both the informal and formal associations described in the Complaint, including through the PCMA, extend beyond parallel participation in the fraud and prescribing practices that the State alleges constituted racketeering activity. "An inability to describe the exact inner workings of the relationships between the enterprise members, without the benefit of discovery, is not dispositive at this stage."[157]

Finally, as to this point, Express Scripts does not contest that the State's allegations of decades-long conduct show that the enterprise existed over a period

---

[154] *See Turkette*, 452 U.S. at 583; *see also In re Nat'l Prescription Opiate Litig.* (*Opioid MDL III*), Case No. 1:17-MD-2804, 2019 WL 4279233, at *2 (N.D. Ohio Sept. 10, 2019) ("If . . . the common purpose is not separate from the pattern of racketeering activity, [then] there is no RICO violation (there is likely just a conspiracy to commit a crime).").

[155] Docket 72 (SEALED) at ¶ 289.

[156] Docket 72 (SEALED) at ¶ 293.

[157] *Opioid MDL I*, 2018 WL 4895856, at *18.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 41 of 50

of "longevity sufficient to permit [its] associates to pursue the enterprise's purpose."[158]  Thus, the State has plausibly alleged a RICO enterprise.

### 4. Conduct or Participation in the RICO Enterprise

Express Scripts next contends that the State has not plausibly alleged that Defendants "conduct[ed]" or "participate[d]" in the RICO enterprise's affairs.[159]  "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."[160]  In other words, the State must allege that "Defendants made decisions or knowingly carried out acts that helped to further the common purpose of the enterprise."[161]  Express Scripts further contends—based primarily on out-of-circuit precedent—that a defendant's actions must be on behalf of the enterprise as opposed to its own business interest to trigger RICO liability.[162]  Even accepting this point as true, the State's allegations meet this bar.

The SAC alleges that opioid manufacturers "contracted and agreed with Express Scripts to coordinate unfettered formulary placement with no or limited

---

[158] *See Boyle*, 556 U.S. at 946; Docket 77 at 30–34.

[159] Docket 77 at 34 (alterations in original) (quoting 18 U.S.C. § 1962(c)).

[160] *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

[161] *Opioid MDL III*, 2019 WL 4279233, at *3.

[162] *See* Docket 77 at 34–35.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 42 of 50

[utilization management] measures regarding each opioid drug on Express Scripts' standard formulary offerings, such that there would be as little impediment as possible to opioid prescribing and dispensing."[163] Express Scripts is alleged to have made formulary and utilization management decisions that contradicted their representations to the public and to their clients, as well as their contractual obligations,[164] and therefore were made plausibly on behalf of the enterprise and its purpose as opposed to simply in Express Scripts' business interests.[165]

### 5. Racketeering Activity

The RICO element of racketeering activity requires predicate acts, which are set out in 18 U.S.C. § 1961(1). Here, the State identifies two categories of predicate acts: (1) mail and wire fraud, 18 U.S.C. §§ 1341, 1343; and (2) violations of the Controlled Substances Act ("CSA"), 21 U.S.C. § 841.[166]

The mail and wire fraud statutes are identical except for the method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme

---

[163] Docket 72 (SEALED) at ¶ 263.

[164] Docket 72 (SEALED) at ¶¶ 333–39.

[165] *See also In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig. (JUUL II)*, 533 F. Supp. 3d 858, 871 (N.D. Cal. 2021) ("Whether the allegedly fraudulent schemes identified by plaintiffs and Bowen's conduct in support is simply evidence of Bowen conducting the routine affairs expected from a founder and the Chief Technology Officer of JLI or of his racketeering acts in support of a RICO enterprise is better determined on a full evidentiary record.").

[166] Docket 72 (SEALED) at ¶ 415.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 43 of 50

to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud.[167]   A plaintiff must "plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)."[168]

Express Scripts contends that the State's allegations do not meet this heightened pleading standard because they do not show "the time, place, and specific content of the false representations" or the "identities of the parties to the misrepresentation."[169]  But in complex fraud schemes, as alleged here, Rule 9(b) does not require a plaintiff to allege "all facts supporting each and every instance" of fraud; rather, it requires only "some level of specificity" such that defendants can defend against the fraud claims against them.[170]

In this case, the State has alleged the elements of mail and wire fraud with adequate specificity.  The "scheme to defraud" alleged in this case is a scheme to defraud the public and others into expanding the prescription and dissemination of opioids by making false and fraudulent statements, representations, and

---

[167] *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citation omitted).

[168] *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986).

[169] Docket 77 at 37–38 (quoting *Schreiber Distrib. Co.*, 806 F.2d at 1401).

[170] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010).

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 44 of 50

concealing certain facts.[171] The SAC identifies specific patterns of misrepresentations and alleges that the misinformation campaign was pursued collectively by the named members of the Formulary & UM Enterprise.[172] These allegations are sufficient to put Express Scripts on notice of the fraud claims against them.

Moreover, the State alleges that Express Scripts violated the CSA, 21 U.S.C. § 841, by "knowingly or intentionally possessing and dispensing controlled substances for reasons and purposes not authorized by the Act."[173] Such violations of the CSA qualify as RICO predicates.[174]

Express Scripts points out that the CSA applies only to pharmacies.[175] However, the Complaint alleges that three Express Scripts entities—ESI Mail

---

[171] *See Opioid MDL I*, 2018 WL 4895856, at *19–21 (finding that the MDL complaint pled with particularity that the "Opioid Marketing and Supply Chain Enterprises," including the opioid manufacturer and distributor defendants, committed acts of fraud and racketeering).

[172] *See, e.g.*, Docket 72 (SEALED) at ¶¶ 274, 332–34.

[173] Docket 72 (SEALED) at ¶ 415(c). 21 U.S.C. § 841(a) makes it unlawful to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance" except as authorized by Subchapter I of the CSA.

[174] Under 18 U.S.C. § 1961, acts of racketeering include "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance . . . punishable under any law." Express Scripts does not contest that violations of § 841 are RICO predicates. *See* Docket 77 at 38–39; *see also Opioid MDL I*, 2018 WL 4895856, at *21–22 (finding that violations of § 843 of the CSA qualify as racketeering activity).

[175] Docket 77 at 38.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 45 of 50

Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc. (the "mail pharmacy defendants")—provide mail pharmacy services.[176]  The CSA therefore applies to these three defendant entities.

As to the mail pharmacy defendants, Express Scripts contends that the CSA criminalizes only the "knowing or intentional" dispensing of a controlled substance "except as authorized,"[177] and that "the scienter requirement extends to authorization, meaning the defendant must "knowingly or intentionally" dispense the drug in an 'unauthorized manner,' by intending to dispense drugs 'outside the usual course of professional practice and without a legitimate medical purpose.'"[178] The State's Second Amended Complaint alleges as much:  "Express Scripts' mail order pharmacy dispensed massive amounts of branded and generic opioids without performing the requisite due diligence on prescriptions or refusing to fill prescriptions that could not be resolved through due diligence."[179]  The State further alleges that Express Scripts failed "to report to DEA losses that occurred during the mail order delivery process" and that Express Scripts' "employees

---

[176] *See* Docket 72 (SEALED) at ¶¶ 44–56.

[177] Docket 77 at 38 (quoting 21 U.S.C § 841).

[178] Docket 77 at 38–39 (first quoting *Ruan v. United States*, 597 U.S. 450, 457 (2022), and then quoting *United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006)).

[179] Docket 72 (SEALED) at ¶ 326.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 46 of 50

Case 3:23-cv-00233-SLG    Document 111    Filed 03/10/25    Page 46 of 50

generated invalid DEA registration numbers where it lacked registration numbers from pharmacists."[180]   The Court finds these allegations sufficient to plausibly allege CSA violations, and by extension, additional predicate acts of racketeering by the mail pharmacy defendants.

## II.    Motion for Partial Stay

In its Motion for a Partial Stay, Express Scripts moves to stay discovery on the State's public nuisance and UTPA claims pending the outcome of the State's appeal in *State of Alaska v. Walgreens Co.*, *et al.*[181]   Former Judge Kindred previously denied what was then *the State's* motion to stay,[182] stating that:

> Staying this case to await the outcome of [the *Walgreens* appeal] would significantly delay this case and only resolve one of several issues. Furthermore, the Alaska Supreme Court's ultimate decision in *Walgreens* is not likely to severely disrupt this litigation . . .  There is the possibility that the Supreme Court affirms Judge Gandbhir's decision and undermines this Court's analysis of the public nuisance claim. If that occurs, the parties may have conducted some superfluous discovery. However, because each of the claims in this case stems from the same core set of facts, the Court expects that discovery as to the public nuisance claim will significantly overlap with

---

[180] Docket 72 (SEALED) at ¶ 217.

[181] Case No. 3AN-22-06675 CI (Alaska Super. Ct. Mar. 1, 2024), *appeal docketed sub nom State of Alaska v. Albertsons Cos.*, *et al.*, Case No. S-19048.

[182] The parties have switched their positions as to whether this litigation should be stayed pending resolution of the *Walgreens* appeal. The State previously moved for a stay, and Express Scripts opposed that motion. Docket 61; Docket 65; Docket 69 at 12. Express Scripts now moves for a stay, and the State opposes it. Docket 83; Docket 85.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 47 of 50

the other two claims[183] at stake and reduce the likelihood of unnecessary discovery.[184]

The Court's conclusion has not changed. A stay would delay this litigation, and that delay may be significant, as oral argument on the *Walgreens* appeal has only recently been heard.[185] Any hardship that Express Scripts may suffer in being required to move forward with discovery on the State's public nuisance and UTPA claims is limited. As the parties jointly acknowledged in their Scheduling and Planning Conference Report, much of the discovery from Express Scripts in this case has been or will be produced in other active and ongoing opioids cases, and will need only to be re-produced or re-designated to be produced in this action.[186] Express Scripts has also acknowledged that, beyond the discovery produced in

---

[183] These "two claims" appear to be the State's RICO and UTPA claims. Former Judge Kindred therefore appears to have missed that Judge Gandbhir's decision also dismissed the State's UTPA claim, so an affirmance of that decision by the Alaska Supreme Court will provide guidance to this Court as to the viability of the State's claims for public nuisance *and* the UTPA. The point nonetheless remains that the State has alleged claims beyond those addressed by the pending Alaska Supreme Court case.

[184] Docket 73 at 2.

[185] The Court takes judicial notice of the Alaska Court System Supreme Court Oral Argument Calendar (February 2025), https://perma.cc/VFN8-PQ2P, setting oral argument in *State of Alaska v. Albertsons Cos.*, *et al.*, Case No. S-19048, for February 18, 2025. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). The State indicates in its briefing that it expects a decision on the appeal some time in 2026, and Express Scripts does not dispute this expectation. Docket 85 at 13 n.6.

[186] *See* Docket 78 at 2; Docket 85 at 16 n.7.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 48 of 50

other opioids cases, this case will require only "limited supplementation of the fact discovery record for matters directly related to Defendants' operations in Alaska."[187]  And because the Court will allow the State's RICO claim to proceed, the parties will need to engage in discovery related to that claim regardless of the outcome of the motion to stay and the outcome of the *Walgreens* appeal.  Because of the overlapping nature of the facts underlying the State's claims, it will be most efficient if Alaska-specific supplementation related to the State's public nuisance and UTPA claims is allowed to proceed in tandem with discovery on the RICO claim.[188]  Allowing discovery to proceed in this case will also reduce the likelihood of any dispute about the State's participation in upcoming depositions in the MDL.[189]  A stay could prejudice the State if those depositions proceed without the State being afforded the opportunity to ask questions that go to the alleged harms in Alaska.

---

[187] Docket 78 at 3.

[188] *See* Docket 103 at 6 (Express Scripts acknowledging "[t]here's no doubt some overlap in discovery" across the claims.)

[189] At oral argument, the State asserted that it won't be able to participate in the upcoming depositions in the MDL if this case is stayed, to which Express Scripts stated their position that the State will be able to participate in those depositions even if the claims are stayed in this case. Docket 103 at 18, 35.  Denial of the motion to stay should resolve any question about the State's participation.

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 49 of 50

In light of the minimal hardship or inequity to Express Scripts from this litigation proceeding, and the inefficiencies and potential for prejudice to the State that would result from a stay, Express Scripts' Motion for Partial Stay is DENIED.

## CONCLUSION

In light of the foregoing, Express Scripts' Partial Motion to Dismiss at Docket 77 is GRANTED IN PART and DENIED IN PART as set forth herein, and Express Scripts' Motion for a Partial Stay at Docket 83 is DENIED. The State's RICO claim is DISMISSED to the extent that it seeks equitable relief and damages for increased personnel costs for State employees. The State shall file either an amended complaint alleging additional facts in support of the application of the separate accrual rule or a notice that no amended complaint will be filed and that the State will proceed solely on its fraudulent concealment theory of timeliness within 14 days of the date of this order. Express Scripts shall file its answer within 14 days thereafter.

DATED this 10th day of March, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00233-SLG, *State of Alaska v. Express Scripts, et al.*
Order on Partial Motion to Dismiss and Motion for Partial Stay
Page 50 of 50

Case 3:23-cv-00233-SLG     Document 111     Filed 03/10/25     Page 50 of 50